## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

GLOBAL ONE ENGINEERING, LLC,　　　)
a Colorado limited liability company　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Plaintiff,　　　　)
　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　)　　　Case No. 15-CV-583-CVE-FHM
　　　　　　　　　　　　　　　　　)
SITEMASTER, INC.,　　　　　　　　　)
An Oklahoma for profit corporation　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Defendant.　　　)

# DEFENDANT SITEMASTER, INC.'S MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EXPERT MICHAEL BERRYMAN AND <u>INCORPORATED BRIEF IN SUPPORT</u>

Respectfully Submitted,

<u>s/ Heidi L. Shadid</u>
Philip J. Eller, OBA #2675
Andrew A. Shank, OBA #22298
Heidi L. Shadid, OBA #22897
ELLER & DETRICH, P.C.
2727 East 21st Street, Suite 200
Tulsa, Oklahoma  74114
Telephone (918) 747-8900
Facsimile (918) 747-2665
PEller@EllerDetrich.com
AShank@EllerDetrich.com
HShadid@EllerDetrich.com

***Attorneys for Defendant/Counterclaimant
SiteMaster, Inc.***

<u>**TABLE OF CONTENTS & AUTHORITIES**</u>

<u>**Page**</u>

I.    **INTRODUCTION**.................................................................................1

II.   **SUMMARY OF FACTS** .................................................................3

III.  **ARGUMENT AND AUTHORITIES**.............................................8

     A.    **STANDARD FOR A MOTION TO EXCLUDE EXPERT TESTIMONY.** ...................................................8

        *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 125 L.Ed.2d 469, 113 S.Ct. 2786 (1993)..........................8, 9

        *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)................................................9

        *Graves v. Mazda Motor Corp.*, 675 F.Supp.2d 1082, 1092 (W.D.Oklaa. 2009) ...........................................9

        *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001) ...........................................9, 12

        *U.S. v. Nacchio*, 555 F.3d 1234, 1241 .................................9

     B.    **PLAINTIFF'S EXPERT, MICHAEL BERRYMAN, SHOULD NOT BE ALLOWED TO TESTIFY IN THIS CASE BECAUSE HE DOES NOT HAVE THE NECESSARY QUALIFICATIONS**...................................10

        *Taylor v. Cooper Tire & Rubber, Co.*, 130 F.3d 1395 (10th Cir. 1997) ...........................................10

        *United States v. Allerheiligen* (unpublished opinion), 221 F.3d 1353, 2000 U.S. App. LEXIS 18529............................10, 11

        *Broadcourt Capital Corp. v. Summa Medical Corp.*, 972 F.2d 1183 (10th Cir. 1992) ...........................................10, 11

        *United States v. Chang*, 207 F.3d 1169 (9th Cir. 2000) ......................11

        *Milne v. USA Cycling Inc.*, 575 F.3d 1120 (10th Cir. 2009)...........................................11, 12

*Alexander v. Smith and Nephew*, 98 F.Supp. 2d 1310
(N.D. Ok. 2000) .................................................................................... 12

*Conroy v. Vilsack*, 707 F.3d 1163 (10th Cir. 2013) ....................... 12, 13

*Taber v. Allied Waste Sys.*, 642 Fed. Appx. 801, 206 U.S.
App. LEXIS 3587 ................................................................................. 13

    C.     **EVEN IF MICHAEL BERRYMAN IS QUALIFIED AS
AN EXPERT, HIS TESTIMONY MUST BE
NEVERTHELESS BE EXCLUDED BECAUSE IT IS
NOT BASED ON RECOGNIZED INDUSTRY
STANDARDS** .......................................................................15

*Heer v. Costco Wholesale Corp.*, 589 F. Appx. 854, 862,
2014 WL 5462336, 2014 U.S. App. LEXIS 20863 ...................... 15, 17

*White v. Deere & Co.*, 2016 U.S. Dist. LEXIS 15647 ................................ 15

    D.     **MICHAEL BERRYMAN'S TESTIMONY SHOULD
BE EXCLUDED BECAUSE HE WILL NOT ASSIST
THEIR TRIER OF FACT** .......................................................**18**

*U.S. v. Archuleta*, 737 F.3d 1287, 1297 ............................................. 18

**IV.**     **CONCLUSION** ...........................................................................**18**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

GLOBAL ONE ENGINEERING, LLC,          )
a Colorado limited liability company  )
                                       )
                    Plaintiff,         )
                                       )
vs.                                    )       Case No. 15-CV-583-CVE-FHM
                                       )
SITEMASTER, INC.,                      )
An Oklahoma for profit corporation     )
                                       )
                    Defendant.         )

**DEFENDANT SITEMASTER, INC.'S MOTION IN LIMINE TO**
**EXCLUDE PLAINTIFF'S EXPERT MICHAEL BERRYMAN**
**AND INCORPORATED BRIEF IN SUPPORT**

Defendant/Counterclaimant SiteMaster, Inc. ("SiteMaster"), by and through its counsel of

record, respectfully submits the following Motion in Limine to Exclude Plaintiff's Expert Michael

Berryman and incorporated brief in support.

## I.    INTRODUCTION

The United States Navy (the "Navy") hired SiteMaster, as general contractor, to perform

the maintenance, repair and painting of a communication tower (the "Tower") on the Naval Radio

Transmitting Facility in Niscemi, on the island of Sicily, Italy, in the Mediterranean Sea (the

"Project"). The Tower is 827 feet and stabilized by 24 guy wires, which are anchored at different

points on the ground.  SiteMaster contracted with Plaintiff/Counterclaim Defendant Global One

Engineering, LLC ("Global One" or "Plaintiff") as the specialty subcontractor for the painting

portion of the Project. The painting portion of the Project required Global One to perform two

tasks: 1) prep, prime and paint the Tower, and 2) paint the corroded portions of the anchors around

the Tower (collectively, the "Work").

Contrary to Global One's professed expertise and experience, SiteMaster soon learned that

Global One was not an experienced specialty Tower painting subcontractor. Global One was inefficient, failed to meet the standards necessary to complete the Work, and ultimately, left the Project with less than half of the Work completed. Global One's failures forced SiteMaster to request a second shut-down of the naval communications in order for SiteMaster to return to Niscemi with a new specialty painting subcontractor to complete Global One's Work. SiteMaster withheld final payments from Global One due to the fact that SiteMaster must incur costs above-and-beyond the amounts claimed by Global One in order to remedy Global One's errors. Global One filed the subject lawsuit seeking approximately $300,000.00 in unpaid invoices. SiteMaster counterclaimed for approximately $1,000,000.00 of expenses SiteMaster must incur in hiring a new specialty subcontractor to complete Global One's Work.

The lawsuit requires a determination of whether Global One performed as required by the contract, i.e. whether Global One's failure to complete their work is attributable to Global One (due to ineptness) or were outside Global One's control. Implicit in this determination is a review of what standards were applicable to the Work as set forth in the contract between Global One and SiteMaster and whether Global One met those standards.

Global One has proffered Michael Berryman as an expert witness to testify concerning this ultimate issue. However, Mr. Berryman *has no knowledge, skill, experience, training or education in the applicable standards or on this type of project* to allow him to testify as to whether Global One performed the Work per the standards. Further, *Mr. Berryman's opinions are not based on recognized industry standards* so they are neither reliable nor relevant. Finally, Mr. Berryman's opinions *will not assist the trier of fact*. For all of these reasons, Mr. Berryman's testimony should be excluded from the trial in this matter.

2

## II.   SUMMARY OF FACTS

1.     The Tower provides communication for U.S. Navy submarines. The Project was time sensitive with very little flexibility in the schedule, because the Tower was required to be shut-down during the Project. The communication function normally provided by the Tower was handled by another facility while the Tower was of out of operation. SiteMaster subcontracted the Work to Global One.  The Work was to begin on June 8, 2015 and be completed by September 15, 2015, a period of ninety-nine (99) calendar days for Global One to complete the Work. [See Plaintiff's Complaint and SiteMaster's Counterclaims, collectively attached hereto as Exhibit 1; Report of Michael Berryman ("Berryman Report"), dated July 18, 2016, attached hereto as Exhibit 2; and Excerpts from the Deposition of Michael Berryman ("Depo Trans."), taken August 30, 2016, attached hereto as Exhibit 3; Award Letter, dated April 1, 2015, attached hereto as Exhibit 4].

2.     The Scope of Work, as described in the Award letter and incorporated documents was as follows:

> Completely repaint the entire tower.  The tower should be cleaned free of any loose or flaking paint using lead abatement procedures.  An epoxy primer and urethane color coating should then be applied.  Include painting of corroded areas at all guy anchors.

[See Award Letter, Ex. 4 at p. 1].

3.     Global One's Statement of Work consisted of:

A.     The hiring of workers in the United States and transporting them overseas to perform work;

B.     Obtaining the necessary equipment, materials and supplies in the United States and shipping them overseas for use on a jobsite;

C.     If necessary, hiring additional personnel and obtaining additional

3

equipment, materials and supplies overseas in order to accomplish the Work;

        D.     Prepping the surface of the Tower by scraping off the loose paint;

        E.     Priming the Tower by applying a coat of two-part epoxy primer;

        F.     Painting the Tower by applying a final two-part coat of paint;

        G.     Prepping the surface of the anchors by removing all corrosion;

        H.     Painting the anchors by applying a zinc-rich paint;

        I.     Determining the proper methods to be used in scraping the paint from the Tower;

        J.     Determining whether sheepskin mitts versus spraying was the best method of applying the primer and paint to the Tower;

        K.     Determining, at any given time, how many workers ("climbers") should be on the Tower performing the Work and how many workers should be on the ground in order to accomplish the Work on time;

        L.     Determining if each step of the process (prepping, priming, and painting) should be done on the entire Tower one step at a time, or whether all three steps should be performed one section of the Tower at a time;

        M.     Determining how and where to position the shrouding material associated with the Project, which shrouding material is designed to capture the lead paint being removed and protect properties surrounding the Tower from damage arising from the Work on the Tower;

        N.     Determining whether to run a dull putty knife over the entire surface of the tower as part of the scraping process;

        O.     What specific scraping tools and surface preparation methods were mandated by SSPC industry standards;

P.      What specific painting application methods were mandated by SSPC industry standards;

Q.      Whether the changes in the aforementioned Tower activities amounted to any changes in the "Scope of Work" for which additional payment was due to a subcontractor;

R.      What qualifications, training and experience were needed for the workers who removed the paint, applied the paint and performed all other activities on the Tower Project. [See Award Letter, Ex. 4 at pp. 1-3]

4.      Michael Berryman has been offered as Plaintiff's expert witness in this case. He describes himself as a "General Contractor" in the general construction business. [Depo Trans., Ex. 3 at 47:24-25, 130:20 – 131:4]. *He has no education, training, experience or expertise in any of the activities described in the above Paragraph 3.* [See Curriculum Vitae, Berryman Report, Ex. 2, p. 13; Depo Trans., Ex. 3 at 129:3 – 134:15]. He has never worked on a project overseas and has never done a project for the United States Navy. [Depo Trans., Ex. 3 at 122:18-22, 131:25 – 132:1]. He has no experience in determining how long it should take the activities associated with a project involving the scraping and recoating of an overseas communications tower that is operated by the United States Navy. He has never prepped or painted a tower. [Depo Trans., Ex. 3 at 131:5-7]. He has never inspected surface preparation or paint on a tower. [Depo Trans., Ex. 3 at 131:8-10]. He has never given an opinion on SSPC Industry Standards. [Depo Trans., Ex. 3 at 131:11-13]. He has never even climbed a tower in connection with his work as a General Contractor. [Depo Trans., Ex. 3 at 130:5-15]. He is not a member of the Association of General Contractors, the American Association of Builders and Contractors, the American Subcontractors Association, or the American Association of Specialty Contractors. [Depo. Trans., Ex. 3 at 132:16 – 133:5]. Over the last three to five years, 25-33% of his income has come from

5

expert building consulting services and the balance has come from fees generated as a General Contractor. [Depo Trans., Ex. 3 at 139:14 – 140:4].

5.      Michael Berryman has expressed three opinions on behalf of Global One in this lawsuit, as follows:

Opinion 1:      Global One was diligent in their work; their work was delayed by things outside of their control; the scope was increased which increased the cost of their work; and they're owed approximately $367,000.00 from SiteMaster.

Opinion 2:      SiteMaster's counterclaim in its entirety is without merit.

Opinion 3:      The Global One work that was performed was acceptable subject to minor some minor touchups.

[See Berryman Report, Ex. 2 at pp. 4, 8, and 11; Depo Trans., Ex. 3 at 11:21-12:13].

6.      Michael Berryman based his opinions described above on his analysis of the project activities described in Paragraph 3 above. The majority of Michael Berryman's opinion is devoted to a discussion of the various details of the Work enumerated in paragraph 3 above. [Berryman Report, Ex. 2].   Michael Berryman based his three opinions of an analysis of the activities described in Paragraph 3 above, *even though he has no education, training, experience or expertise that would qualify him to analyze these activities as it relates to the Scope of Work* referenced in Paragraph 2 above.  See Paragraph 4 above.

7.      The Society for Protective Coatings ("SSPC") was founded in 1950 as the Steel Structures Painting Council, a non-profit professional society concerned with the use of coatings to protect industrial steel structures. In 1997, the name of the association was changed to the Society for Protective Coatings to better reflect the changing nature of as coatings technology and the ever-expanding types of construction materials. SSPC is the only non-profit association that is focused on the protection and preservation of concrete, steel and other industrial and marine structures and services through the use of high-performance protective, marine and industrial

6

coatings. SSPC is the leading source of information on surface preparation, coating selection, coating application, environmental regulations, and health and safety issues that affect the protective coatings industry. SSPC's core products and services include:

- Coatings industry standards

- Technical publications (books, videos, e-pubs, white papers)

- Training & certification courses

- Painting contractor certification programs

- Conferences and events

- Webinars

[The SSPC website, www.sspc.org/about-us/about-us-what-is-sspc/ (last visited September 12, 2016) attached hereto as Exhibit 5].

7.    SiteMaster has retained its own expert, Michael O'Brien. SiteMaster has submitted the expert report of Michael O'Brien concerning the actual work done by Global One and the relevant standards applicable to the Project and Work. [See Report of Michael O'Brien ("O'Brien Report") dated August 1, 2016, attached hereto as Exhibit 6].

8.    SSPC standards applied to the project at issue in this lawsuit.  [Depo Trans., Ex. 3 at 76:22-77:3 and O'Brien Report, Ex. 6]. In its promotional materials, Global One stated: "We follow SSPC surface preparation standards".  [O'Brien Report, Ex. 6, pg. 10 of 72 (Prep Work)]. Unlike SiteMaster's expert Michael O'Brien, Plaintiff's proposed expert Michael Berryman has virtually no knowledge about SSPC Industry Standards, and he has never testified in a case involving SSPC Industry Standards. [Depo Trans, Ex. 3 at 129:12-130:14].

### III.   ARGUMENTS AND AUTHORITIES

### A.   STANDARD FOR A MOTION TO EXCLUDE EXPERT TESTIMONY

The Federal Rules of Evidence describe the requirements which must be met *before* a witness is allowed to testify as an expert.  Specifically,

> A witness *who is qualified as an expert by knowledge, skill, experience, training, or education may testify* in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED.R.EVID. 702 (emphasis added). Once the proponent of the testimony establishes that the expert has the requisite qualifications, the court then reviews the opinions proffered to determine whether they are relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 125 L.Ed.2d 469, 113 S.Ct. 2786 (1993).  Relevancy is governed by FED.R.EVID. 402, which provides the baseline for the admissibility of all evidence – that it must be relevant.  Relevant evidence is defined as having "any tendency to make a fact more or less probable than it would be without the evidence; and…the fact is of consequence in determining the action." FED.R.EVID. 401.

Relevancy and reliability are governed by case law interpreting FED.R.EVID. 702.  The *Daubert* court outlined a series of factors to be considered when determining the relevance and reliability of a particular scientific theory or technique. *Daubert*, 509 U.S. at 593-994.  These factors include:

1. Whether the theory or technique can be and has been tested;
2. Whether the theory or technique has been subjected to peer review and publication;

3. The known or potential rate of error; and
4. General acceptance in the field.

*Id.* at 593-594. The focus must be on the methodology, not the conclusions they generate.

While *Daubert* set forth the general framework for analysis of FED.R.EVID. 702, it only involved scientific knowledge. In 1999, the Supreme Court analyzed the application of FED.R.EVID. 702 to other technical knowledge in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). In *Kumho*, the Supreme Court pointed out that the trial court may consider one or more of the *Daubert* factors when determining the reliability of an expert's testimony, but the test is flexible because the factors neither necessarily nor exclusively applies to all experts in every case. *Id.* at 141.

Thus, the admissibility of expert testimony is a two-step process. *Graves v. Mazda Motor Corp.*, 675 F.Supp.2d 1082, 1092 (W.D.Okla. 2009). First, the expert must be qualified, i.e. have the necessary knowledge, skill, experience, training or education to properly testify in the form of an opinion. FED.R.EVID. 702; *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). Next, the expert must meet the relevancy and reliability factors of Rule 702 and *Daubert* (and its progeny).

The proponent of the expert testimony bears the burden of establishing, by a preponderance of the evidence, that the witness meets the qualification, relevancy and reliability requirements. *U.S. v. Nacchio*, 555 F.3d 1234, 1241. The trial court acts as the "gatekeeper" for admissibility. *Daubert*, 509 U.S. at 589. "The trial court must have latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability." *Kumho*, 526 U.S. at 137.

9

**B.    PLAINTIFF'S EXPERT, MICHAEL BERRYMAN, SHOULD NOT BE ALLOWED TO TESTIFY IN THIS CASE BECAUSE HE DOES NOT HAVE THE NECESSARY QUALIFICATIONS.**

As referenced above, the main issue in this case is whether the failure to complete the Work on the Project was caused by Global One's own failures and errors or by delays outside of Global One's control.  Michael Berryman is not qualified to make this determination.

The Tenth Circuit has addressed the qualification issue in a number of instances, holding that the expert must have the necessary education, training and experience to offer an opinion *on the specific issues involved in the litigation*. *See Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395 (10th Cir. 1997) (trial court did not abuse its discretion in excluding an expert who it deemed insufficiently qualified to testify on the critical issues of the case); *United States v. Allerheiligen* (unpublished opinion), 221 F.3d 1353, 2000 U.S. App. LEXIS 18529 (striking experts whose proposed testimony extended beyond their respective demonstrative areas of specialized knowledge).

In the case of *Broadcourt Capital Corp. v. Summa Medical Corp.*, 972 F.2d 1183 (10th Cir. 1992), Plaintiff's securities clearing firm brought an action against defendant corporation for conversion after defendant refused to register and transfer its stock. Defendant claimed on appeal that the trial court abused its discretion in refusing to allow one of its witnesses to testify as an expert. The trial court found that the witness was not sufficiently qualified to testify as an expert. The Tenth Circuit affirmed the trial court's ruling and stated:

> After reviewing the record, we cannot conclude that the district court abused its discretion. Although the witness had some education and training in the field, he admitted that he had no experience whatsoever in representing large brokerage houses, clearing corporations, or transfer agents. The district court concluded that the witness mainly had the type of experience that any attorney would receive representing clients in the area of securities law. The district court found that *this general experience and education did not qualify the witness as an expert in the*

10

*securities area*. Given the record in this case, the district court's finding was not an abuse of discretion.

*Broadcourt Capital Corp.*, 972 F.2d at 1195 (emphasis added).

In the case of *United States v. Allerheiligen*, *supra*, the Tenth Circuit discussed and cited with approval the case of *United States v. Chang*, 207 F.3d 1169 (9th Cir. 2000). In *Chang*, the defendant proffered expert testimony from a witness on the authenticity of a document. The Trial Court held that the witness did not have sufficient qualifications and did not allow the witness to testify. On appeal the defense argued that the witness's "practical experience" was sufficient to qualify him as an expert. The Ninth Circuit Court of Appeals affirmed the trial court's ruling excluding the testimony and stated:

> Lausier did not have the requisite "knowledge, skill, experience, training, or education" required by Rule 702; he did not testify as to any training or experience, practical or otherwise, detecting counterfeit securities. It was not an abuse of discretion for the district court to determine that Lausier's practical, experience in "international finance" did not amount to practical experience determining whether a particular security is counterfeit, the fact at issue in this case.

*Chang*, 207 F.3d at 1173.

In the case of *Milne v. USA Cycling Inc.*, 575 F.3d 1120 (10th Cir. 2009), Plaintiff sought to introduce expert testimony related to a mountain bike racing accident. The district court disallowed the testimony of the expert because he was "not sufficiently qualified to render expert testimony on the applicable standards of care for mountain bike racing," regardless of the fact that the expert "had experience organizing and supervising paved road bike races" and the accident occurred on a paved roadway that was part of the course. The 10th Circuit Court of Appeals, in affirming the district court, stated that the expert had never published any articles about bicycle racing and his investigation of hundreds of vehicle-bicycle collisions did not indicate his familiarity with the specific facts of the case. In further confirming that the expert was not permitted to testify as an expert, the 10th Circuit stated that the expert's

11

opinions in this case were not based on a study of other similar races, an analysis of precautionary measures used in mountain bike races and the risks and benefits of such measures, or any other empirical or quantitative studies. Instead, he relied almost exclusively on his experience in paved road racing – experience that the district court reasonably determined was inapplicable to the context of road bike racing—to form his conclusions.

*Milne*, 575 F.3d at 1134.

In *Ralston, supra,* the 10th Circuit Court of Appeals affirmed the exclusion of unqualified expert testimony. Plaintiff contended that because the expert was a "board certified orthopedic surgeon" she was "entitled to rely on general orthopedic and surgical principles and concepts." But the district court found that the expert had never used or researched the particular device at issue and that the expert had never published any articles discussing the device or method.  The court quoted with approval *Alexander v. Smith and Nephew*, 98 F. Supp. 2d 1310 (N.D. Ok. 2000) in saying that "merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue." Thus, even though it was an orthopedic device and she was an orthopedic surgeon, it was not "within the reasonable confines of her subject area," disallowing her testimony.

The case of *Conroy v. Vilsack*, 707 F.3d 1163 (10th Cir. 2013) further illustrates the 10th Circuit Court of Appeals support for excluding unqualified expert testimony. The Plaintiff alleged employment sex stereotyping and wanted to call an expert to testify that had qualifications including a Ph.D. in business and twenty-five years of experience in the human resources management and organizational behavior field.  The expert had testified in cases involving similar matters including sexual harassment, wrongful termination and age discrimination. But the Court of Appeals made clear that to qualify, the expert "had to possess skill, experience, or knowledge in the 'particular field' of sex stereotyping . . . or sex stereotyping had to fall 'within the reasonable confines' of her expertise." The Court determined the Plaintiff did not make a sufficient showing

12

that the expert was qualified in the field of sex stereotyping, saying:

> [Expert] concededly had no particular expertise in sex stereotyping. Her general expertise was in business and human-resource management, and her more specific expertise was in age discrimination, sexual harassment, and wrongful termination. Though it is certainly possible that sex stereotyping is sufficiently related to these areas so as to be within their 'reasonable confines,' it was up to [Plaintiff] to establish that connection, and she failed to do so. Further, in light of the fact that [expert] had never researched, written about, or opined on this topic before, it was hardly 'arbitrary, capricious, whimsical, or manifestly unreasonable' for the district court to find her unqualified.

*Conroy*, 707 F.3d at 1169.

The 10th Circuit also affirmed the exclusion of expert testimony in the case of *Taber v. Allied Waste Sys.*, 642 Fed. Appx. 801, 2016 U.S. App. LEXIS 3587, involving an injury sustained when the Plaintiff fell off a ladder affixed to his truck. The Court said that *"[A]n expert who possesses knowledge as to a general field but lacks specific knowledge does not necessarily assist the jury."* (internal citations omitted)(emphasis added). The Plaintiff wanted to call the expert to testify on the likelihood that the ladder's design contributed to his fall. However, the 10th Circuit Court of Appeals upheld the district court's ruling that the subject was outside the "reasonable confines of the witness's expertise," concluding that:

> [W]hile [Expert] had conducted an estimated one thousand 'investigations and evaluations of injury-producing accidents,' [Expert] could recall working on only one case involving a fixed ladder 'some years ago' and could not recall the details of the accident. The district court also noted that [expert] 'does not have any experience in ladder design or manufacture, has never served on ANSI committees regarding standards applicable to ladders and has never published any articles about ladder design.'... Based on those findings, the district court concluded [Expert] lacked specific knowledge and expertise in the area of ladder design and ladder accident investigation.

*Taber*, 642 Fed. Appx. at 807. It is not enough that the witness is an expert in something: the witness must be an expert on matters that are critical to the lawsuit.

13

Michael Berryman may be an expert on something, but he is <u>not</u> an expert on any of the issues that are critical in this case. This case involves a contract for the removal of loose paint and application of new paint according to SSPC standards on the Tower located on naval base thousands of miles away from the United States. The issues that are critical in this case are those enumerated in Paragraphs 2-3 of the Summary of Facts in Section II of this motion and brief. Michael Berryman has no expertise on any of these issues. He has never done a project overseas, so he cannot know what is involved in sending American staff to an overseas site or ordering materials in the country of the overseas project. He has never done a project for the Navy, so he does not know what special procedures and scheduling are required on Navy projects. He has never worked on a telecommunications tower. He has never been involved in a project in which loose paint was removed from and new paint was applied to a telecommunications tower. He is not an engineer by training or experience: his degree is in molecular biology, a subject which is totally irrelevant to any of the issues in this lawsuit.

Michael Berryman has no experience with the surface preparation and painting application standards set forth by the SSPC, so he is totally unqualified to testify as to the cause and reasonableness of any delays on the Project in question. For the same reason, he is totally unqualified to testify about whether payment has properly been made from SiteMaster to Global One, and whether Global One owes money to SiteMaster. Because Mr. Berryman has no experience whatsoever in the staffing overseas construction projects, the staffing of Navy projects, the staffing of communication tower projects, or the SSPC standards, he is totally unqualified to express an opinion on whether Global One properly staffed the Project at issue in this lawsuit.

Finally, Mr. Berryman has no training, experience or knowledge concerning SSPC standards for prepping, priming and painting the Tower or prepping and painting the anchors as

14

required by the Navy or by the tower coating industry. He is totally unqualified to testify as to whether the loose paint removal procedures and techniques used by Global One were proper, whether there were any changes in scope such that Global One would be relieved of their slow pace, or who should be responsible for the additional delays and expense caused by any alleged changes to the scraping techniques or the method of paint application.

### C.   EVEN IF MICHAEL BERRYMAN IS QUALIFIED AS AN EXPERT, HIS TESTIMONY MUST BE NEVERTHELESS BE EXCLUDED BECAUSE IT IS NOT BASED ON RECOGNIZED INDUSTRY STANDARDS.

Michael Berryman has no knowledge of the industry standards as it relates to the surface preparation, priming and painting of a communications tower on the naval base. "Federal courts have consistently held that compliance with industry standard is relevant to a reliability determination under Rule 702." *Heer v. Costco Wholesale Corp.*, 589 F. Appx. 854, 862, 2014 WL 5462336, 2014 U.S. App. LEXIS 20863.  In *Heer*, the court concluded that, although the proffered expert was qualified to offer expert testimony based on his education and experience, his opinions were not reliable. The trial court identified several deficiencies in the methodology in the proffered expert, including the failure of the witness to refer industry standards. *Id.*

See also *White v. Deere & Co.*, 2016 U.S. Dist. LEXIS 15647, attached hereto as Exhibit 7, wherein the U.S. District Court for the District of Colorado, quoting from *Heer*, supra, stated on Page 5 of its Opinion that, "An expert's *failure to take into account the relevant industry standards* weighs against the reliability of that expert's opinion." (emphasis added).

Further, in *Heer* the Tenth Circuit compared the opinions of plaintiff's expert with the opinions of the defense expert. The Court noted that the opinions of the defense expert were based on industry standards, whereas the opinions of the plaintiff's expert were not based on any industry standards. *Id.* at 863 One of the reasons the Trial Court disallowed any testimony by plaintiff's

15

expert (and the Tenth Circuit affirmed) was the failure of plaintiff's expert to base his opinion on any industry standards. In the case at bar, the same situation exists. The SSPC industry standards were applicable to this Project (see paragraph 8 of the Summary of Facts) and SiteMaster's expert Michael O'Brien has described, in detail, how Global One failed to comply with the industry standards. [O'Brien Report, Ex. 6].  Global One's expert Mr. Berryman, on the other hand, is basically ignorant about SSPC standards. In this regard, Michael Berryman testified in his deposition as follows:

> <u>Depo Trans., Ex. 3 at 128:7 – 130:15</u>
> 7 Q You mentioned when we started this morning
> 8 that in preparing your report you analyzed the
> 9 file that Mr. McCann gave you and that you, I
> 10 believe, you said you looked at a website. Is
> 11 that correct?
> 12 **A Yes.**
> 13 Q What website was that?
> 14 **A Just SSPC.**
> 15 Q Did you print anything out?
> 16 **A No.**
> 17 Q Did you look at any other websites?
> 18 **A No.**
> 19 Q You remember if it was SSPC.com?
> 20 MR. MCCANN: Org.
> 21 Q (By Mr. Shank) .net? .org?
> 22 **A I mean all I did was just put SSPC into a**
> 23 **search engine and something popped up that I**
> 24 **recognized the logo or emblem that I found in**
> 25 **some of these documents. And I just -- I didn't**
> Page 129
> 1   **really even pay attention. I just clicked on**
> 2   **that.**
> 3 Q What's your knowledge of the SSPC
> 4 standards?
> 5 **A Gosh, that's hard to answer. I mean could**
> 6 **you be more specific?**
> 7 Q How much experience do you have with SSPC
> 8 standards?
> 9 **A Not much.**
> 10 Q Can you quantify that for me?
> 11 **A Well, I mean I wouldn't be able to -- I**

16

12 **wouldn't be able to -- I nor very many other**
13 **people would be able to tell what all the**
14 **different designations are, SP 1, 2, 3, 4, et**
15 **cetera. It's pretty broad -- there's surface**
16 **application, how to qualify contractors, you**
17 **know, there's a lot to it.**
18 Q Have you ever worked as an expert on any
19 other case involving SSPC standards?
20 **A I'm not sure.**
21 Q Is there any documentation you could look
22 at to determine whether or not that was the case?
23 **A Just -- not without an extensive review of**
24 **all the files I've been involved in for a number**
25 **of years.**
Page 130
1 Q Based on your comment that you don't have
2 many experience with them, is it fair to say that
3 it's not likely that you've testified as an
4 expert in an SSPC case in the past?
5 **A I can't recall a case where I testified as**
6 **an expert, but I think -- I think you have to**
7 **realize that I probably only testify in, you**
8 **know, somewhere between 5 and 10 percent of the**
9 **cases that I'm involved in. So it doesn't mean I**
10 **haven't had a case or cases with it; I just**
11 **haven't -- I don't recall having testified.**
12 Q Do you recall any other case in which you
13 were the expert and that case revolved around
14 SSPC standards?
15 **A No, I don't.**

Plaintiff's proposed expert knows next to nothing about SSPC standards, even though they

are a critical part of the issues in this case. His only involvement with SSPC standards is that the

clicked on the SSPC website, didn't pay much attention to it and just "clicked on". Because his

opinions do not consider industry standards, the methods he used to analyze the issues in this case

are unreliable, as a matter of law. *Heer v. Costco Wholesale Corp. supra.* Accordingly, this court

should rule that Michael Berryman is not allowed to testify as an expert witness Global One.

17

### D.   MICHAEL BERRYMAN'S TESTIMONY SHOULD BE EXCLUDED BECAUSE HE WILL NOT ASSIST THE TRIER OF FACT.

The purpose of expert testimony is to "***help the trier of fact to understand the evidence or to determine a fact in issue***." FED.R.EVID. 702(a) (emphasis added).  The expert is expected to utilize his or her expertise to advance the jury's understanding to any degree, which is not already covered by any other witness. *U.S. v. Archuleta*, 737 F.3d 1287, 1297.

The entirety of Mr. Berryman's testimony involved his acceptance of Global One's conclusion that none of the referenced delays were the fault of Global One, and, in fact, he does not believe Global One did anything wrong. [Depo. Trans., Ex. 3 at 141:6-9].  He then opines that since the delays are not the fault of Global One, it is his expert opinion that they should be paid for the time they were on the site because they diligently worked while on site.  [Depo Trans., Ex. 3 at 143:23 – 146:7].  His opinions and conclusions are nothing more than a recitation of the position of Global One and the testimony of its own witnesses.  This does not assist the trier of fact to understand any issues.  Instead, it lends false credibility and puts an improper stamp of expertise upon an issue that he is not competent to decide. Because his analysis merely restates that which the parties will already testify, such additional testimony, in the form of expert opinion should not be allowed.

## IV.   CONCLUSION

Global One has proffered Michael Berryman as an expert witness to testify concerning whether Global One's failure to complete the specialized subcontractor Work on the 827 foot, Naval communications tower located overseas was due to its ineptitude or factors outside its control.  However, Mr. Berryman ***has no knowledge, skill, experience, training or education in the applicable standards or on this type of project*** to allow him to testify as to whether Global One performed the Work per the standards.  Further, ***Mr. Berryman's opinions are not based on***

18

*recognized industry standards* so they are neither reliable or relevant.  Finally, Mr. Berryman's opinions *will not assist the trier of fact*.  For all of these reasons, Mr. Berryman's testimony should be excluded from the trial in this matter.

WHEREFORE, Defendant/Counterclaimant SiteMaster, Inc. respectfully prays that the Court grant this motion and exclude Plaintiff Global One Engineering, LLC's proffered expert Michael Berryman from testifying in the trial of this matter, and for such further relief as the Court deems just and proper.

Respectfully Submitted,


s/ Heidi L. Shadid
Philip J. Eller, OBA #2675
Andrew A. Shank, OBA #22298
Heidi L. Shadid, OBA #22897
ELLER & DETRICH, P.C.
2727 East 21st Street, Suite 200
Tulsa, Oklahoma  74114
Telephone (918) 747-8900
Facsimile (918) 747-2665
PEller@EllerDetrich.com
AShank@EllerDetrich.com
HShadid@EllerDetrich.com

*Attorneys for Defendant/Counterclaimant SiteMaster, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of September, 2016, I electronically transmitted Defendant/Counterclaimant SiteMaster, Inc.'s Motion in Limine to Exclude Plaintiff's Expert Michael Berryman and Incorporated Brief in Support to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

James P. McCann

By:     s/ Heidi L. Shadid
        **Attorney for Defendant/Counterclaimant**
        **SiteMaster, Inc.**