

# Berryman

426 N.W. 5TH
Oklahoma City, OK  73102
Office: (405) 235-4646
Fax: (405) 235-3311
Email:  mberryman@berrymanokc.com

July 18, 2016

James P. McCann
McDonald McCann Metcalf Carwile
15 East Fifth Street, Suite 1400
Tulsa, Oklahoma  74103

Re:  Global One Engineering, LLC,
     Plaintiff

     v.

     SiteMaster, Inc.,
     Defendant
     United States District Court for the
     Northern District of Oklahoma
     Case No. 15-CV-583-CVE-FHM

Dear Mr. McCann:

The following report details to date my pertinent observations, opinions and conclusions and can be changed only in writing by the undersigned.  My opinions are based upon my review of the documentation provided to me, a listing of which appears, herein.  In forming my opinions I utilized my thirty-eight (38) years of experience as a construction general contractor as well as my formal education, training and knowledge previously acquired.  I reserve the right to supplement this report to address additional information made available to me and to provide illustrative exhibits at a later date.

## DOCUMENTS REVIEWED

- Complaint
- Defendant/Counterclaimant SiteMaster, Inc.'s Answer and Counterclaims
- Tower Inspection Report labeled SITEMASTER_01142-SITEMASTER_01190



EXHIBIT 2

Global One Engineering, LLC v. SiteMaster, Inc.  July 18, 2016
U.S.D.C., Northern District of Oklahoma  Page 2

- Niscemi Tower Painting Award Letter pgs. 1-5
- Purchase Order pages 1-6
- Global One Engineering Invoices
- SITEMASTER 02702 – SITEMASTER 02714
- Proposal SITEMASTER 00147 – SITEMASTER 00185
- Niscemi Tower Painting Award Letter labeled   SITEMASTER 00001 – SITEMASTER 00005
- Subcontractor Agreement labeled SITEMASTER 00006 - SITEMASTER 00010
- SSPC Surface Preparation Standards Summary
- Purchase Order SITEMASTER –SITEMASTER 00040
- Rashad Hutchins photos labeled SITEMASTER 02715 – SITEMASTER 02725
- SiteMaster's Calculation of damages
- RD Hutchins profile
- Contractor's daily work reports, dated 5/25/15 through 9/27/15
- Global One proposal, submitted 3/16/15
- Glenn Chalker email, dated 4/25/16
- RaShad Hutchin's email, dated 5/04/15, regarding work schedule
- Samantha Schaffer email, dated 5/04/15, regarding Niscemi Tower work
- RaShad Hutchin's email, dated 5/07/15
- Global One letter, dated 5/14/15
- Contractor's Daily Report, dated 7/01/15
- Sandra Biedron email, dated 7/10/16
- Mike Citarella email, dated 7/15/15
- SiteMaster 02028
- SiteMaster 02029
- SiteMaster 02046
- CorroMetrics Reports, email labeled SiteMaster 02027
- Terry Bigger email, dated 8.13.2015
- SM letter, dated 8.14.2015
- Terry Bigger email, dated 8.14.2015
- Terry Bigger email, dated 8.16.2015
- Terry Bigger email, dated 8.17.2015
- Milton email, dated 8.28.2015
- SiteMaster 02040 & 02041
- SiteMaster 02737
- SiteMaster 02026
- SiteMaster 02767
- SiteMaster_02731
- SiteMaster 02726
- SiteMaster 02728
- SiteMaster_02729
- Rashad Issues, email dated 9/12/15
- RaShad Issues, 2nd email, dated 9/12/15

- RaShad Issues, 3rd email, dated 9/12/15
- RaShad Issues, 4th email, dated 9/12/15
- RaShad Issues, 5th email, dated 9/12/15
- Allstate Tower Proposal 2016
- R MacDonald letter Global One 1.7.2016
- CorroMetrics Proposal 2016, SiteMaster_02772 & 02773
- U.S. Navy Specs Maintenance Coating, SiteMaster02554,02555,02556,02563,02582,02620,02621,02622,02623 and 02624

## QUALIFICATIONS

I have been a general contractor since 1978 and have constructed and/or renovated numerous building structures while serving in the capacity of the prime contractor. I routinely enter into construction contracts and interpret the architectural plans, specifications and other contract documents in the performance of construction work. I interface with architects, engineers, municipal building department officials and building owners in the ordinary course of the general construction business. I am knowledgeable of the construction means and methods as well the sequencing of construction activities required to perform construction projects.

## ISSUE

The Plaintiff in this matter, Global One Engineering, LLC (GOE), entered into a construction subcontract with the Defendant, SiteMaster, Inc., (SiteMaster) to repaint an 827' radio transmitting tower operated by the United States Navy located in Niscemi on the island of Sicily, Italy. GOE performed and completed certain portions of their activities/work for which it has not been paid, while other portions remain incomplete. In a counterclaim, SiteMaster contends that its anticipated cost to complete the remaining portions of work far exceeds GOE's present claim for any additional payment.

## REVIEW AND ANALYSIS

I reviewed the documents outlined above in order to form opinions concerning:

1) The nature and extent of the work/activities performed by GOE and any sums due and owing, accordingly.
2) The nature and merit of SM's counterclaim for damages against GOE.

## OPINIONS

***Opinion #1:*** *GOE was diligent in manning the Niscemi jobsite and pursuing their contract work. Although unforeseen delays prevented GOE from completing all its work, GOE should be compensated for the potions that were completed according to the schedule of values established in Purchase Order #8703 issued by SM, dated 4/1/15. Also, GOE is entitled to be reimbursed for the additional expenses it incurred that resulted from unforeseen delays and any changes to the contract scope of work, plus a mark-up for general overhead and profit on these additional expenses. I have determined that $367,987 is due and payable to GOE for their contract work.*

1.1. Daily reporting of jobsite activities was conducted by SiteMaster employees. The daily reports, contemporaneously recorded, show the good attendance records, punctuality, and daily efforts of the GOE work forces. The reports also indicate the delays encountered due to MUOS protests, inclement weather and changes in the work scope. For instance, an all-encompassing NTP, giving GOE the full go ahead to proceed with its work, was not tendered until 7/1/15, twenty (23) days after GOE's contractual onsite start date.[1]

1.1.1. SM daily reports also indicate the areas of the tower that were being addressed as GOE's work progressed. Namely, the reports indicated which elevation segments of the tower had been prepped, which primed as well as those painted. The 9/14/15 SM daily progress report indicates that the project was 55% complete at GOE's deadline.[2]

1.2. It is an industry practice to utilize an established schedule of values (SOV), agreeable to the parties to a construction contract, for administering payments over the course of the activities covered by the contract. The SM Purchase Order issued to GOE in this matter established the following (SOV):[3]

| | | |
|---|---|---|
| A. Contract signing: | | $ 25,000.00 |
| B. Pre-mobilization/material/design shipping: | | $125,000.00 |

---
[1] SiteMaster 02964.
[2] SiteMaster 03038.
[3] Purchase Order #8703, dated 4/1/15.

| | | |
|---|---|---|
| C. | Mobilization: | $100,000.00 |
| D. | 24 anchors @ 2,567.29/ea.: | $ 61,615.00 |
| E. | Tower prep, 827 LF @ 164.89/LF: | $136,363.63 |
| F. | Tower prime, 827 LF @ 219.85/LF: | $181,818.17 |
| G. | Tower paint, 827 LF @ 219.85/LF: | $181,818.17 |
| H. | Demobilization/final closeout: | $200,000.00 |
| I. | Rounding adjustment: | $      .03 |
| **TOTAL** | | **$1,011,615.00** |

1.2.1. In the instant matter, I see the use of the SOV to administer the appropriate partial payments as project activity progressed. For instance, SM was billed and subsequently paid on 6/1/15 the following GOE invoices for Items A-B, above:

- Payment for Item A, above, #1520120-1 for $25,000.00
- Payment for Item B, above, #1520120-2 for $125,000.00

These funds were tendered, as they should have been, even before any physical work of prep/prime/paint was performed on the Niscemi site as they were not dependent upon any level of onsite production; rather, they are intended to cover the activities described. As the activities were performed, SM subsequently paid for the activity.

1.2.2. Similarly, after GOE had mobilized to the Niscemi site, SM was billed and subsequently paid on 7/9/15 the following GOE invoice for Item C, above:

- Payment for Item C, above, #1520120-3 for $102,000.00 (note: $2,000 was a late penalty paid by SM and $100,000 was for the mobilization).

Again, these funds were tendered, as they should have been, without being tied to any level of production on site, as only Items D-G are intended to delineate the specific values of GOE's progress for on-site prep/prime/paint production. Clearly, the $102,000 payment is to cover GOE's efforts and expenses to perform what was described in the SM Purchase Order: "Mobilization (Travel)", plus an applicable late penalty. This method is an industry standard.

Global One Engineering, LLC v. SiteMaster, Inc.  July 18, 2016
U.S.D.C., Northern District of Oklahoma  Page 6

1.2.3. Concerning GOE's onsite production, the following invoices were submitted by GOE along with expressions of completed work milestones consistent with the contact documents. These levels of completed production were also observed by SM employees and recorded in the SM Daily Reports. SM approved the work described and paid the following GOE invoices:

- Progress Invoice #1520120-8:     $122,861.34.[4]
- Progress Invoice #1520120-10:     28,031.30.[5]

**TOTAL, paid work progress invoices:**     **$150,892.64**

1.2.4. The daily reports also generally substantiate the prep/prime/paint production levels for which GOE billed SM in the following invoices, yet they remain unpaid:

- Progress Invoice #1520120-12:     $65,607.92.[6]
- Progress Invoice #1520120-13:     $41,221.90.[7]
- Progress Invoice #1520120-15:     $17,588.00.[8]

**TOTAL, unpaid work progress invoices:**     **$124,417.82**

1.2.5. Using the SM Daily Reports and the Allstate Tower Proposal dated 11/25/15[9] I have further determined the value of work completed on the tower by GOE. As it appears in these documents and as I understand it, the prep/prime/paint on three (3) complete bands on the tower, approximately 275.70 LF (91.9 LF/band x 3 each = 275.70 LF). Additionally, three (3) other bands had been scraped and twenty-four (24) anchors has been painted. Using the original contract SOV, I have determined the value of the completed work is as follows:

- Scrape, (2 x 275.70 LF) @ 164.89/LF:     $90,920.35
- Prime, 275.70 LF @ 219.85/LF:     60,612.65
- Paint, 275.70 LF @ 219.85/LF:     60,612.65
- Anchors, 24 each @ 2,567.29:     61,614.96

**TOTAL, completed**     **$273,760.61**

1.2.6. Upon its return to the United States from Niscemi, GOE billed SM for Items H and I with invoice #1520120-16, dated 9/14/15, for $200,000.00.

---

[4] Global 000680.
[5] Global 000682.
[6] Global 000684.
[7] Global 000685.
[8] Global 000687.
[9] SiteMaster 02776-02778

      Payment for this invoice is due and payable; yet, SM refuses to tender this amount to GOE claiming that payment should be somehow tied to on-site production. This is in error and inconsistent with industry standard and SM's prior precedent. Like the SM activities represented by Items A-C, above, for which SM paid without consideration of GOE's onsite production level(s), Items H-I should also be paid as they cover activities and expenses that are separate, distinct, and not dependent on work production levels.

1.3.    It is an industry standard that the additional costs incurred for changes to the contract scope of work over the course of a construction project are paid. Also, often paid are additional costs stemming from delays caused by incidents outside a contractor's control. Typically, contractors add a mark-up for overhead and profit to the increased costs. In this matter, it is outlined in *Article 9. Changes* of the SM Purchase Order #8703, dated 4/1/15, issued to GOE.[10]

1.3.1.    In fact, SM paid the following GOE invoices for reimbursement of costs incurred for project delays and changes to the scope of work:

- Invoice #1520120-4, dated 6/14/15:    $65,958.00
- Invoice #1520120-5, dated 7/01/15:    26,734.16
- Invoice #1520120-6, dated 7/09/15:    4,801.29
- Invoice #1520120-9, dated 8/04/15:    19,205.16
- Invoice #1520120-11, dated 8/17/15:    80,644.56

SM has not paid the following invoice which arose due to work not performed through no fault of GOE:

- Invoice #1520120-14, dated 9/06/15:    5,093.39

Subtotal unpaid change invoices/change orders:    $202,436.56
Mark-up, overhead and profit (20%)[11]:    40,487.31

**Total unpaid change invoices/change orders:**    **$242,923.87**

1.4.    I have concluded that SM currently owes GOE $367,987. The following accounting entries, imported from above, support this conclusion:

- Contract signing:    $ 25,000.00
- Pre-mobilization/material/design shipping:    125,000.00

---

[10] SM Purchase Order, Niscemi Project, dated, 4/1/15, page 3, Article 9. Changes.
[11] Considering the size, stature and complexity of the project's location and scope of work, I believe a 20% mark-up will comport with industry standard.

| | |
|---|---:|
| • Mobilization: | 102,000.00 |
| • Late penalty | |
| • Completed production: | 273,298.91 |
| • Demobilization/final closeout: | 200,000.00 |
| • Total unpaid change invoices/change orders: | 242,923.87 |
| • Rounding: | .03 |
| • Paid to date: | (600,235.81) |

**Total Due:** **$367,987.00**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

***Opinion #2:*** *SM's counterclaim for damages, outlined to be in excess of $997,047.56, is without merit. GOE's inability to complete its work timely stemmed from a series of delays that were outside GOE's control and from changes SM made to GOE's "mean's and methods" of accomplishing its contract work. Any costs that may be required to complete work originally undertaken by GOE are the responsibility of SM and/or the USN, not GOE. Also, a portion of SM's counterclaim is comprised of elements that had been previously approved and paid by SM during the construction process and is invalid. The individual elements of SM's counterclaim are enumerated below, along with the respective basis to support my opinion concerning them:*

| | |
|---|---:|
| 1) New painting and engineering contractors to complete the project—2016 remobilization: | $668,083.00 |
| 2) Costs for payroll and direct expenses for SiteMaster project management personnel required to be on site for 2016 remobilization plus associated travel costs for SM personnel and third party paint inspector: | $174,800.00 |
| 3) Costs for full time third party NACE painting Inspector for quality control (per Navy requirements)—2016 remobilization: | $ 73,520.00 |
| 4) Costs for additional labor and materials to keep Global One moving forward—2015: | $80,644.56 |

**TOTAL, damage elements 1-4, above:** **$916,403.00**

2.1. Elements 1-3 of SM's damages arise from SM's mistaken claim for the *anticipated, not actual,* costs it believes it will incur to complete GOE's contract work. Apparently, SM contends that these costs are GOE's

responsibility, since GOE was unable to complete its work by September 15, 2015. I disagree.

2.1.1. GOE's contract with SM established a project schedule wherein GOE could begin work as early as 6/8/15 and complete their work, including demobilization by 9/15/15.[12] This provided ninety-nine (99) calendar days for GOE to complete its work in the manner outlined in the contract documents; however, delays, outside the control of GOE, were caused by SM and others and prevented GOE from having the ninety-nine (99) days it needed to complete its work timely.

2.2. It is an industry standard that additional contract time is afforded to a contractor, or subcontractor, when its pursuit of the contract work is impeded by delays and interruptions that are clearly outside its control. As enumerated above, this is outlined in the contract documents in this matter. We also see this practice at work in USN's letter to SM wherein a request was made for advisement on the potential costs and extension of the contract performance period contemplated for the Niscemi project.[13]

2.2.1. For instance, SM demonstrated compliance with this industry standard in its approval and payment of GOE's Invoice #1520120-9, dated 8/4/15, for $19,205.16. This payment reimbursed GOE for additional expenses stemming from delays that were outside GOE's control; however, no additional contract time was allowed, apparently, because SM's agreement with the USN would not allow for additional time that might become necessary due to weather, administrative delays, anticipated protests, etc. Nonetheless, the project's immovable overall completion date existed through no fault of GOE nor did it change GOE's need for, or contractual entitlement to, ninety-nine (99) calendar days to complete its work.

2.2.2. Additional examples of delays include:

- GOE's contractual start date of 6/8/15 was delayed fourteen (14) days because it was not allowed to proceed on the project site until 6/22/15. This was approved and paid by SM.
- Two (2) days were lost due to another contracting entity, under the control of SM, mistakenly de-rigging the Niscemi Tower.
- Four (4) work days lost due to SM administrative failure to secure the required USN approvals for GOE to begin work. This was approved and paid by GOE.
- One (1) lost for an MUOS court decision.
- Four (4) days lost for a MUOS protest. This was approved and paid by GOE.

---

[12] SM Award letter dated 4/1/15, Global 00597-00601 and SM-GOE Subcontractor Agreement, dated 4/15/15, Global 00667-670.
[13] Department of the Navy letter to SM, dated May 4, 2015.

These delays, and others that will be further outlined in this report, kept GOE from completing its work by September 15, 2015.

2.3.  It is an industry standard that additional contract time is afforded to a contractor, or subcontractor, as necessary and reasonable when the scope of its contract work is changed and/or alternate means and methods of accomplishing the work are requested. In the subject matter, this standard was outlined in the Purchase Order SM issued to GOE.[14] Over the course of the project, SM changed GOE'S scope of work, but made no allowance for additional work time that was reasonable, known and/or reasonably should have been inferred by SM as being required to accomplish the changes to the work.

2.3.1.  Other delays, caused by changes to GOE's scope of work/means and methods of accomplishing the work, further denied GOE the necessary time it needed to complete its contract work. Examples include:

- Additional two (2) days to alter the prep, prime and painting of the tower anchors.
- Twelve (12) days to rework previously scraped metal surfaces and to change the remaining surface preparation. Although SM did recognize the additional work provided by GOE in regard to increasing the surface preparation scope of work, the additional time required to accomplish the more intensive surface prep was not addressed by SM.[15]
- On 7/18/15 SM halted GOE's efforts to expedite progress by using two (2) shrouds in lieu of the single shroud originally contemplated in GOE's work program. Ironically, and as an example of SM's poor project management, with only a little over a month left before the 9/15/15 deadline, SM issued a work plan that included the use of two shrouds.
- Two (2) days delay to experiment, and to no avail, with alternate painting mitts, brushes and rollers to alter the finished appearance of the painted surfaces, even though the contact documents did not define an "acceptable aesthetic appearance" or offer any specifications for the mitt.
- Six (6) days to change the painting process from mitt painting to spray painting. It should be noted that GOE presented spray painting to SM, long before onsite work started, as an option outlined in their proposal submitted to GOE on 3/16/15. GOE conveyed at that time spray painting would offer a better appearance while increasing production and reducing the project timeline.[16] Instead, SM required mitt painting. SM's eventual, but woefully late, acceptance of GOE's suggestion for spraying v. mitt, contributed to GOE not being able to complete its work timely.
- One (1) day due to a change in the sequencing of which colorized bands on the tower would be painted.

---

[14] SM Purchase Order, Niscemi Project, dated, 4/1/15, page 3, Article 9. Changes.
[15] SM letter to GOE, dated 8/14/15
[16] Global One Engineering Proposal, dated 3/16/15, submitted to SM, entitled "Niscemi Tower Repairs."

2.4. Element #4 of SM's damage counterclaim—"additional labor and materials, etc."--$80,644.56 was clearly approved by SM during the course of the work[17]; hence, it is invalid. Of this total, $8,277.79 was approved by GOE for the mobilization of an additional GOE employee to the site.[18] The remaining $72,366.77 covered the additional costs of changing the scope of work from mitt painting to spray painting.[19] GOE's invoice specifically enumerated these costs on invoice #1520120-11, not as a "milestone" progress payment, but as extra cost for a change to the contract scope of work. SM paid said invoice on 8/27/15.[20]

2.5. Although not valid as previously outlined, it should be noted that element #1 of SM's damage claim—"New painting and engineering contractors"--$668,083.00 provides for a different and more expensive work scope than was awarded to GOE. A review of the Allstate Tower invoice indicates that the future surface prep will be more intensive and the paint application appears to be by spraying, instead of mitt painting.

*****************************************************************************

***Opinion #3:*** *As GOE began its work and at various times during the course of the project, the work was inspected by SM, the USN and other third party quality control inspectors. This is the common practice on a project of this type. GOE accepted the inspectors' feedback. Adjustments in the sequencing and/or methods of performing the work were implemented by GOE as the work progressed. Despite noted quality concerns that arose from time-to-time during the project, it appears that the work performed by GOE was substantially complete with the exception being some final touch-up work.*

3.1. SM Daily Job Reports indicate SM/GOE participated in construction jobsite meetings to discuss the specific nuances of the jobsite conditions. The process steps required to accomplish the work generally described in the contract documents as "prep/prime and paint" were discussed. As one example, after work began it was discovered that the degree of corrosion at the tower anchors was such that hand tools were insufficient to remove it and power tools were needed. Such meetings as this to address specific jobsite conditions are common practice in the industry.

3.2. The SM inspectors pointed out areas they believed needed more attention by GOE. This inspection/feedback/corrective process is also typical for this type of project work. The SM Daily Reports show that GOE

---

[17] Terry Bigger, SM CFO email to Samantha Schaffer, GOE, dated 8/13/15.
[18] Terry Bigger, SM CFO email to Samantha Schaffer, GOE, dated 8/14/15.
[19] SM letter to GOE, dated 8/14/15.
[20] Global 0683

      responded to the need for corrective actions to promote quality. GOE addressed these concerns as the overall project proceeded.

3.3.    SM never issued an industry standard punch list. Although GOE did engage in performing final touch-ups of their work in the final days prior to their deadline, 9/15/15, GOE was limited by this stop work deadline date.

3.4.    Despite the inspectors' directives to GOE pertaining to issues of quality that arose from time-to-time, it appears that by 9/15/15 three (3) bands of the tower had been completed, the exception being a few areas that may have needed touch-up. This is further confirmed by the Allstate Tower Proposal (Allstate) that reads in part: *"290' of tower to be touched-up" (Previously painted)".*

3.5.    It also appears that three (3) other bands of the tower had been scraped; again, with the exception of some required touch-up. This is demonstrated by Allstate as its proposal reads in part: *"260' of tower to be spot prepped, primes (sic) and painted. (Previously cleaned)".*

3.6.    It appears that the painting of the anchors has been completed and no additional work is necessary.[21]

*************************************************************************

I understand that discovery is in progress and I reserve the right to supplement this report to address additional information made available to me and to provide illustrative exhibits at a later date. Please find attached as a part of this report my current Curriculum Vitae which lists all cases in which I have given testimony, both at deposition and trial over the last four (4) years. It establishes my qualifications and my compensation.

Sincerely,

Michael J. Berryman
BERRYMAN ENTERPRISES, INC.

---

[21] Allstate Tower Proposal, dated 11/25/15.

# CURRICULUM VITAE

**Name:** Michael J. Berryman

**Born:** September 23, 1957
Lincoln, Nebraska

**Occupation:**

President and Chief Executive Officer
Berryman Enterprises, Inc.
General Contractor / Consultant
426 N.W. 5th Street
Oklahoma City, Oklahoma  73102

**Formal Education:**

B.A., Vanderbilt University 1979
Molecular Biology

**Licenses:**

Qualifying Agent (QA) and/or Qualifying Managing Employee (QME) for licensure and/or operating authorization in the following states:

| | |
|---|---|
| Louisiana | Arkansas |
| Virginia | Mississippi |
| West Virginia | Nebraska |

**Building Codes:**

| | |
|---|---|
| UBC | Uniform Building Code |
| BOCA | Building Officials and Code Administration |
| SBCCI | Southern Building Code Congress International |
| IRC | International Residential Code |
| IBC | International Building Code |

**Compensation Structure:**

Expert services and review, study, estimation and written opinions shall be billed at a rate of $245.00/ hour.

Expert services at deposition and trial shall be billed at $375.00/hour.


**Previous Depositions and Court Appearances:**

1) The Travelers Indemnity Company v.
   Jones Public Works Authority, A Public Trust, Town of Jones City, an
   Oklahoma Municipality, and Pipeline Regulatory Consultants
   Cause #: CJ-2009-1089
   District Court of Oklahoma County, State of Oklahoma
   Deposition Date: September 20, 2012

2) Todd N. Tipton and Constance J. Tipton v.
   Matt Wilson Custom Homes, LLC, and Matt Wilson, an individual
   Case #: CJ-2010-5567
   District Court of Oklahoma County, State of Oklahoma
   Deposition Date: September 24, 2012

3) Elizama G. Langer, individually and as the personal representative of the
   estate of Juergen J. Langer, Wolfgang Langer, Abraham J. Langer,
   Elizama I. Langer v.
   3M Company a/k/a Minnesota Mining & Manufacturing Company
   Case #: BC447695
   Superior Court of the State of California
   County of Los Angeles
   Deposition Date: October 1, 2012

4) Aimee and Westley Carter v.
   Pool Pros, Pool Pros, Inc., and Dustin Marco
   Case #: CJ-2010-918
   District Court of Comanche County, State of Oklahoma
   Deposition Date: November 19, 2012

5) Linda Fly, Nina Jonson, and Nancy Sumrall as Co-Trustees v.
   Security General
   Case #: CJ-2005-6363
   District Court of Oklahoma County, State of Oklahoma
   Trial Date: December 6, 2012

6) Harvey McIntyre and Laverne McIntyre v.
   3M Company
   Case #: 12-2-15555-1 SEA
   Superior Court of Washington for King County
   Deposition Date: January 10, 2013

7) Amy McHatton Jones v.
Charles Jewell, Vernon Elmore and Elaine Elmore
Case #: CJ-2011-265
District Court of Carter County
State of Oklahoma
Deposition Date: February 5, 2013

8) John Milton Stephens and Sarah Stephens v.
AC and S, Inc. et al
Case #: RG-12-641010
County of Alameda
Superior Court of the State of California
Deposition Date: February 21, 2013

9) The Kenneth Jack Holloway Separate Revocable Trust Dated
September 17, 2002, as Amended v.
Roberson Realty Group, Inc. and Steven Michael Roberson v.
Impact Construction Services
Case #: CJ-2010-2151
County of Tulsa
State of Oklahoma
Deposition Date: March 12, 2013

10) Great Northern Insurance v.
John Watson Landscape Illumination, Inc.
Case #: 12-CV-25-CVE-FHM
United States District Court
Northern District of Oklahoma
Deposition Date: April 12, 2013

11) Douglas W. Brant d/b/a Bethany Medical Clinic v.
State Farm Fire and Casualty Company
Case #: CIV-12-656 F
United States District Court
Western District of Oklahoma
Court Hearing Testimony: May 1, 2013

12) Candelario Fuentes and Maria Fuentes v.
State Farm Lloyds, State Farm General Insurance Company and State
Farm Fire and Casualty Company
Case #: 2010-61039
11th Judicial District Court
Harris County, Texas
Deposition Date: July 3, 2013

13) Candelario Fuentes and Maria Fuentes v.
State Farm Lloyds, State Farm General Insurance Company and State
Farm Fire and Casualty Company
Case #: 2010-61039
11th Judicial District Court
Harris County, Texas
Trial Date: July 29 - 30, 2013

14) Todd N. Tipton and Constance J. Tipton v.
Matt Wilson Custom Homes, LLC, and Matt Wilson, an individual
Case #: CJ-2010-5567
District Court of Oklahoma County, State of Oklahoma
Deposition Date: September 4, 2013

15) Manuel Owen and Lyn Owen v.
Farmers Insurance Company, Inc., a Kansas for profit insurance
Corporation
United States District Court
Case CIV-12-384-JHP
Eastern District of Oklahoma
Deposition Date: October 31, 2013

16) Oolagah Assembly of God Church v.
Western Fire Protection, Inc.
Case #: CJ-2011-555
District Court of Rogers County, State of Oklahoma
Deposition Date: November 4, 2013

17) Jeanie Marvick and Bob Tharp v.
State Farm Lloyds
Cause #: 11-CV-1249
56th Judicial District Court
Galveston County, Texas
Deposition Date: December 12, 2013

18) Paula Sue Miesowitz, as trustee of the Gray Family Revocable Trust
Dated 5/12/93 v.
Greater Plumbing, Inc., an Oklahoma Corporation, Doug Rankin,
individually, Cole's Quality Construction, Inc., an Oklahoma Corp.
Case #: CJ-2012-3635
District Court in and For Tulsa County, State of Oklahoma
Deposition Date: February 12, 2014

19) Shelba Bethel, an individual; The Shelba J. Bethel Trust; Lash Enterprises, LLC, an Oklahoma corporation v.
Barnett-Clark Construction, LLC, an Oklahoma limited liability company; Comfortworks, Inc., an Oklahoma corporation; C&S Heating and Air Conditioning, Inc., an Oklahoma corporation; and Costigan & Associates, Inc., an Oklahoma corporation
Case #: CJ-2010-55
District Court of Cleveland County, State of Oklahoma
Deposition Date: February 21, 2014

20) Trinity Baptist Church v.
Brotherhood Mutual Insurance Services, LLC and Sooner Claims Service, Inc.
Case #: CJ-2011-1157
District Court of Oklahoma County, State of Oklahoma
Deposition Date: May 9, 2014

21) Kimberley K. Ramsey v.
Farmers Insurance Company, Inc., a Kansas Corporation, and Farmers Insurance Exchange
Case No. CJ-2013-962
District Court of Cleveland County, State of Oklahoma
Deposition Date: May 13, 2014

22) Maria D. Rodriguez v.
State Farm Lloyds and Luke Andrew Garcia
Case # DC-13-00992-K
192nd Judicial Court Dallas County, Texas
Deposition Date: June 4, 2014

23) Haiwang Tang and Xiaohong Hu v.
Richardson Homes
Case No. CJ-2012-0645
District Court of Oklahoma County, Oklahoma
Deposition Date: July 29, 2014

24) Gray Construction, Inc. and Burdette Construction Co., v.
Laura E. Knight
Case No. CJ-2012-545
District Court of Canadian County, Oklahoma
Deposition Date: August 7, 2014

25) AC Dwellings, LLC v.
John W. Shawver, III and Carrie M. Shawver
Case No. 71 527 E 00367 13
American Arbitration Association
Deposition Date: August 26, 2014

26) Bruce and Mary Ann Erickson v.
    A.O. Smith Corporation et al.
    Case No. 13-L-1962
    In the Circuit Court Third Judicial Circuit Madison County, Illinois
    Telephonic Deposition Date: October 21, 2014

27) Maria D. Rodriguez v.
    State Farm Lloyds and Luke Andrew Garcia
    Case # DC-13-00992-K
    192nd Judicial Court Dallas County, Texas
    Trial Testimony Date: October 29, 2014

28) Gwen LeClerc Revocable Living Trust v.
    Candelaria Foster, LLC
    Case No. 01-14-0000-5564
    American Arbitration Association
    Deposition Date: January 6 and 7, 2015

29) Gwen LeClerc Revocable Living Trust v.
    Candelaria Foster, LLC
    Case No. 01-14-0000-5564
    American Arbitration Association
    Trial Testimony Dates: Feb. 26 and 27, 2015

30) Cynthia Stokes v.
    Asian Restaurant, LLC
    Case No: CJ-2013-2695
    In the District Court of Oklahoma County
    State of Oklahoma
    Deposition Date: June 26, 2015

31) Tanya Read v.
    Southwestern Roofing & Metal, Inc., et al.
    Case No: CJ-2011-8864
    In the District Court of Oklahoma County
    State of Oklahoma
    Deposition Date: July 7, 2015

32) Martin Brons and Donna Brons v.
    3M Company, et al.
    LASC Case No. BC565859
    Superior Court of the State of California
    County of Los Angeles-Civil Central West
    Deposition Date: 7/24/15

33) Stephen R. Mastin, Peter Ricci, et al., v.
 A.O. Smith Water Products Co. Inc., et al.
 Index No. 190024/14 and 190424/13
 County of Erie
 Supreme Court of the State of New York
 Deposition Date: 7/28/15

34) Martin Brons and Donna Brons v.
 3M Company, et al.
 LASC Case No. BC565859
 Superior Court of the State of California
 County of Los Angeles-Civil Central West
 Trial Testimony Date: 9/15/15

35) Chris and Breann Lander v
 American National Property & Casualty Co.,
 Armstrong Bank and Rodney Cottrell
 Case No. CJ-2014-202
 In the District Court of Sequoyah County
 State of Oklahoma
 Deposition Date: 9/21/15

36) Jordan Bundy v Memport Landing Owner's Association, Inc.
 CJ-2014-3797
 In The District Court of Oklahoma County
 State of Oklahoma
 Deposition Date: 9/22/15

37) Metro Mart, LLC v North Star Mutual Insurance Co.
 Case No. 14-CV-1210-F
 United States District Court
 Western District of Oklahoma
 Deposition Date: 11/06/15

38) Larry Winslowe Lee and Susan Provost Lee v
 AK Steel Corp., et al
 File No.:5:13-CV-00826-FL
 United States District Court for the Eastern District
 Of North Carolina Western Division
 Deposition Date: 11/18/15

39) Maverick Mart, LLC v North Star Mutual Insurance Co.
 Case No. 14-CV-01165-F
 United States District Court
 Western District of Oklahoma
 Deposition Date: 12/09/15

Global One Engineering, LLC v. SiteMaster, Inc.  July 18, 2016
U.S.D.C., Northern District of Oklahoma  Page 20

40) Flanagan Quality Homes, and Bill Flanagan v
Samuel Lee Daube, and Christi Daube, husband and wife
Case No. CJ-2014-249
In The District Court of Carter County
State of Oklahoma
Deposition Date: 01/18/16

41) Jerry and Christina Young v
State Farm Fire and Casualty Company
Cause No. CJ-2012-905-TS
In the District Court of Cleveland County
State of Oklahoma
Trial Testimony Date: 1/29/16

42) Ronnie and Sandi Bliss v
Shelter Insurance Company
Case No. CJ-2013-275
In the District Court of Payne County
State of Oklahoma
Deposition Date: 04/04/16

43) Amanda LaBrier v
State Farm Fire & Casualty Company
Case No: 15-04093-NKL
United State District Court
Western District of Missouri Central Division
Deposition Date: 05/12/16

44) Roger Bain v
State Farm Fire and Casualty Company
Case No: CJ-2013-4032
In the District Court of Oklahoma County
State of Oklahoma
Deposition Date: 05/24/16