IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| 1. | GLOBAL ONE ENGINEERING, LLC, a Colorado limited liability company, | ) ) ) | |
| | Plaintiff, | ) ) | |
| vs. | | ) ) | Case No.  15 CV-583 CVE-FHM |
| 2. | SITEMASTER, INC., an Oklahoma for profit corporation, | ) ) ) | |
| | Defendant, | ) ) | |

**RESPONSE TO DEFENDANT SITEMASTER, INC.'S MOTION *IN LIMINE*
TO EXCLUDE PLAINTIFF'S EXPERT MICHAEL BERRYMAN**

Respectfully submitted,

/s/ *James P. McCann*
James P. McCann, OBA No. 5865
Clayton J. Chamberlain, OBA No. 30520
MCDONALD, MCCANN, METCALF & CARWILE, LLP
15 East 5th Street, Suite 1400
Tulsa, OK  74103
918-430-3700
918-430-3770 – Facsimile
jmccann@mmmsk.com
cchamberlain@mmmsk.com

*Attorneys for Plaintiff Global One Engineering, LLC*

## TABLE OF CONTENTS AND AUTHORITIES

I.  **INTRODUCTION** .................................................................................. 1

II.  **SUMMARY OF RELEVANT FACTS BEHIND THE BERRYMAN REPORT**........... 5

III.  **ARGUMENT AND AUTHORITIES** ................................................................ 9

**1. Rule 702 and the *Daubert* Standard** .............................................................. 9

Cases

    *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.
Ed. 2d 469 (1992) ............................................................................................. 9
*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir. 2005) ............................. 9
*Trucks Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1212-13 (10th Cir. 2004)......... 9
*Goebel v. Denver & Rio Grande Western R.R.*, 346 F. 3d 987, 992 (10th Cir. 2003) ....... 9
*Mitchell v. Gencorp, Inc.*, 165 F.3e 778, 783 (10th Cir. 1999)........................... 10
*Paoli R.R. Yard PCB Litigation.*, 35 F.3d 717, 745 (3rd Cir. 1994)................... 10
*Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003)........................... 10
*Ralston v. Smith & Nephew Richards, Inc..*, 275 F.3d 965, 970 (10th Cir. 2001)........... 10

**2. Mr. Berryman is qualified to testify as an expert in this case because he has over
thirty-eight (38) years of experience in the construction industry working with
subcontractors as well as licensed training and personal knowledge related to
commercial construction billing practices**.............................................................. 10

Cases

    *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 593-94 ..................... 10
*One Beacon Ins. Co. v. Broad. Dev. Group, Inc.*, 147 Fed. Appx. 535 (6th Cir. 2005)...11
*United States v. Bonds*, 12 F.3d 540 (6th Cir. 1993)........................................ 11

**3. Mr. Berryman's expert testimony meets the *Daubert* fit test because the parties in
this case dispute both the customs and practices for billing subcontractors in the
construction industry and the industry standards for dealing with delays in work site
availability, and Mr. Berryman's expert testimony will assist the fact finder in
understanding the technical aspects of the evidence** ......................................... 15

Cases

    *Bitler v. A.O. Smith Corp.*, 400 F.3d 1234 .................................................. 15
*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 591............................ 15
*Steenberg Constr. Co. v. Prepakt Concrete Co.*, 381 F.2d 768, 774 (10th Cir. 1967)16, 17
*Ross Group Constr. Corp. v. Riggs Contr., Inc.*, 2012 U.S. Dist. LEXIS 162600 .......... 17
*Samson Resources Co. v. Quarles Drilling Co.*, 1989 OK CIV APP 8, 783 P.2d 974,

1989 Okla. Civ. App. LEXIS 56 (Okla. Ct. App. 1989) ..................................................18

Statutes and Rules

*OKLA. STAT. TIT 15, §§ 151, 157, 159, 161, 171, 172 (2016)* ...............................16, 18, 
*Fed. R. Evid. 702* ...........................................................................................................18

**IV.      CONCLUSION** ...........................................................................................**18, 19**

Plaintiff, Global One Engineering, LLC ("Plaintiff" or "Global One"), hereby submits its response to Defendant SiteMaster, Inc.'s Motion *in Limine* to Exclude Plaintiff's Expert Michael Berryman ("Defendant's Motion"). In support of its Response to Defendant's Motion, Plaintiff states as follows:

## I. INTRODUCTION

Contrary to SiteMaster's assertion, this is a straight-forward breach of contract case. Defendant, SiteMaster, Inc. ("SiteMaster") failed to pay Plaintiff, Global One, for amounts due on equipment delivered, services rendered, and actual costs incurred in performance of work under a subcontract. In the first half of 2015, Global One was hired as a subcontractor by SiteMaster to perform maintenance work on an 827' guyed LF radio transmitting tower (the "Radio Tower") on a U.S. Navy project located in Niscemi, Sicily, Italy (the "Radio Tower Project"). The Radio Tower Project subcontract between SiteMaster (as contractor) and Global One (as subcontractor) provided that Global One perform preventative maintenance work on the Radio Tower generally described in the Award Letter as follows:

> Completely repaint the entire tower. The tower should be cleaned free of any loose or flaking paint using lead abatement procedures. An epoxy primer and urethane color coating should then be applied. Include painting of corroded areas at all guy anchors.

(hereinafter referred to as the "Work"). See Radio Tower Painting Award Letter, attached hereto as **Exhibit "1"**; see also Radio Tower Global One Subcontractor Agreement, attached hereto as **Exhibit "2"**. According to the Subcontract, Global One was to be fully mobilized and the Work was to commence on June 8, 2015, and end on September 15, 2015, which provided Global One with a total of ninety-nine (99) calendar days to complete the Work. See Ex. 1, at p. 4.[1]

---

[1] All Exhibits hereto which reference particular provisions are, for ease of reference, highlighted in yellow.

Relevant to both the expert testimony of Plaintiff's expert, Michael J. Berryman ("Mr. Berryman") and the ultimate issue in this case, Purchase Order No. 8703 provided that, in the event that SiteMaster terminates Global One as the subcontractor, and the parties cannot agree on an amount of fair compensation due Global One for such termination:

> [SiteMaster], in addition to making **prompt payment of the amounts due** for Equipment delivered or Services rendered prior to the effective date of termination, will **pay [Global One] (without duplication) the actual costs incurred** by [Global One] that are properly allocable or apportionable under recognized commercial accounting practices to the terminated portion of the work, including the cost of discharging liabilities that are so allocable or apportionable.

See Radio Tower Purchase Order No. 8703, attached hereto as **Exhibit "3," p. 5 of Purchase Order Terms and Conditions (emphasis added)**. SiteMaster failed to make "prompt payment of the amounts due" or "pay [Global One] (without duplication) the actual costs incurred." Mr. Berryman will testify, that under the applicable construction industry billing standards, Global One properly submitted invoices and other information to SiteMaster under a schedule of values (SOV) billing method in accordance with the contract documents evidencing the total amount due and unpaid of $367,987. This amount still remains unpaid by SiteMaster.

SiteMaster alleges in defense that it is excused from performance of its payment obligations under the contract documents because, among other reasons, Global One did not complete all the Work by September 15, 2016, the date originally specified for completion of the Work. See Defendant's Answer and Counterclaims, Dkt. No. 16, p. 3, paragraphs 17 and 18, and its Counterclaim. The evidence will show that Global One was unable to complete all the Work on the Radio Tower because of delays in the commencement and performance of the Work that were indisputably the result of outside factors not in the control of Global One. These delays include delays dictated by the Navy; delays caused by another subcontractor on the Radio Tower Project not timely completing its work; delays due to weather; and delays due to changes in the

method and means of performance dictated by SiteMaster, all of which delays exceeded forty (40) delay days in total. The issue for determination by the fact finder is what happens with expected contract performance in the event of such delays and the contract is silent on the matter. The answer to this question lies in the customs and practices of the construction industry – and Mr. Berryman is qualified to testify to these matters.

Plaintiff retained Mr. Berryman as an expert to review the disputed subcontract billing matters and opine on the technical aspects of the contract documents and the commercial construction industry billing practices, including but not limited to the customs and practices in the construction industry related to delays in the commencement or performance of the work and changes in the scope of work. See Michael J. Berryman Expert Report (the "Berryman Report"), pp. 2-4, attached hereto as **Exhibit "4"**. As detailed herein, the expert testimony of Mr. Berryman is relevant to the material issues in this case and with over 38 years of experience in the construction industry, he is qualified to testify about the subject matter.

In Defendant's Motion, SiteMaster complains that Mr. Berryman does not have expertise relating to the Society for Protective Coatings ("SSPC") standards and therefore cannot be an expert on *any* issues in this case. To be clear, Mr. Berryman's expert testimony in this case is *not* intended to establish that Global One's Work met each and every standard of the SSPC, but rather his testimony relates to the commercial construction industry billing practices required for the jury to understand the technical issues related to the parties' contractual obligations, and the breach thereof, between the parties. Indeed, Global One's own employees are competent and will testify to the Work performed and its compliance with the SSPC standards, not Mr. Berryman.

While SiteMaster believes this case is all about its defense that it is excused from its payment obligations to Global because it believes Global One failed to timely complete the Work

in conformance with the SSPC standards, Global One argues and will prove that the actual reason it did not complete the Work was because SiteMaster failed to timely and continuously make the worksite available to Global One, thereby significantly delaying the commencement and completion of the Work.  These delays outside Global One's control effectively eliminated approximately forty (40) days of work time. Mr. Berryman will testify that the custom and practice in the industry as a contractor, like SiteMaster, is to add the delay days to the end of the performance period, thereby ensuring that the subcontractor has the same total number of days to complete the Work—in this case, a total of the 99 days which were contracted for and agreed upon to complete the Work.

The evidence will show that SiteMaster's failure to make the site available to commence and perform Global One's Work in accordance with the specified schedule constituted a breach of the implied warranty to make the site available to Global One in order for it to have the full ninety (99) days provided for in the contract documents to complete the Work. Mr. Berryman will testify that in the absence of a specific agreement between the parties, construction industry standards provide that the subcontractor's time for performance of the subcontract work should be extended by an amount equal to the total amount of delay days in order to allow the subcontractor sufficient time to complete the work. This is an implied term incidental to the subcontract that is customary and necessary to carry into effect the specified time for performance provisions. The SSPC standards are irrelevant to this material issue in Plaintiff's case.

As shown herein, Mr. Berryman's testimony will assist the jury in understanding the technical disputed material issues in this case.  With over thirty (30) years in the relevant

industry, Mr. Berryman is competent to testify within the realm of his expertise, and his expert testimony is admissible under Fed.R.Evid. 702.

## II.  SUMMARY OF RELEVANT FACTS BEHIND THE BERRYMAN REPORT

Throughout discovery in this case, the disputed issues and the development of the facts determined the need for Mr. Berryman's expertise and testimony. The following paragraphs shall serve to provide the Court with background facts that led to Plaintiff's need to engage Mr. Berryman to testify as an expert in this case:

1.    The contract performance period for Global One to complete the Work on the Radio Tower Project should have commenced on June 8, 2016 and ended on September 15, 2016, which constitutes ninety-nine (99) total workdays for Global One to complete its Work on the Radio Tower Project. See Exhibit 1, p. 4.

2.    On June 8, 2016, SiteMaster failed to make the site available for Global One to commence its Work. Starting with these delays at the very beginning of the subcontract performance period and continuing thereafter, there were the following undisputed delays that prevented Global One from performing its Work on the Radio Tower Project:

| Delay Days | Description of Delay |
|---|---|
| June 8, 2016 - June 22, 2016 **(14 delay days)** | Caused by the Navy and Northern Pride contractor not timely completing Phase I of Northern Pride's work on the Radio Tower. This delay was actually acknowledged by SiteMaster and Global One was paid for this delay based on its per diem costs. See Deposition Exhibit 22 at Invoice # 1520120-4, and Deposition Exhibit 52 (stating "nobody is expecting [Global One] to be here any earlier than June 22"), attached hereto as **Exhibit "5"** and **Exhibit "6"**, respectively.[2] |
| June 27, 2016 – June 30, 2016 **(4 delay days)** | Caused by the Navy failing to approve plans and issue a Notice to Proceed. This delay was actually acknowledged by SiteMaster and Global One was paid for this delay based on its per diem costs. See |

---

[2] In discovery in this case, the parties numbered all deposition exhibits sequentially and used the combined exhibits throughout all the depositions.  The Exhibits referred to hereinafter as Exhibits 5-10 are from the Deposition Exhibits which are identified herein by their number. Only the relevant portions of the cited Deposition Exhibits are attached for the sake of brevity.

| | |
|---|---|
| | Deposition Exhibit 23 (explaining the delay days of June 26-30 in "Nature of Delays…" section), attached hereto as **Exhibit "7"**, and Exhibit 5 at Invoice # 1520120-5. |
| July 9, 2016 **(1 delay day)** | Navy ordered no work on the site due to Italian court decision. This delay was actually acknowledged by SiteMaster and Global One was paid for this delay based on its per diem costs. See Exhibit 5 at Invoice # 1520120-6. |
| August 6, 2016 – August 9, 2016 **(4 delay days)** | Navy ordered cessation of work on the site due to the Italian protests. This delay was actually acknowledged by SiteMaster; however, Global One was not paid for this delay based on its per diem costs, as it had been paid in all previous occasions referenced above. See Exhibit 5 at Invoice # 1520120-9, and Exhibit 7. |

3.     During Global One's performance of its Work, there were the following further

delays that created insurmountable difficulties to Global One completing its work by September

15, 2016:

| Delay Days | Description of Delay |
|---|---|
| **2 delay days** | Despite an agreement between Global One and Northern Pride, an agreement that was known to SiteMaster, whereby the rigging ropes on the Radio Tower were to be left on the Radio Tower for use by Global One after Northern Pride finished its work, SiteMaster instead permitted removal of the rigging ropes which required two additional days for Global One to obtain the ropes and replace them on the Radio Tower. See Deposition Exhibit 20, Email from Global One dated August 16, 2016, ¶ 2, attached hereto as **Exhibit "8"**. |
| **2 delay days** | Global One lost two days because SiteMaster insisted on changing the method and means of performance of anchor cleaning, which necessitated acquisition of new and different tools and a generator. See Exhibit 8, ¶ 4. |
| **12 delay days** | Global One lost twelve days because SiteMaster insisted on changing the method and means of performance by requiring an additional level of activity that created more work than was required by the subcontract. See Exhibit 8, ¶ 5. |
| **2 delay days** | Global One lost two days because SiteMaster insisted on changing the method and means of performance by changing the mitt painting requirement to other experimental hand applications in order to improve the aesthetic aspects of the painting despite "aesthetics" not being required by the subcontract. See Exhibit 8, ¶ 6. |
| **2 delay days** | Global One lost two days because SiteMaster insisted on changing the method and means of performance by changing from hand application of the paint to mechanical spray painting, which was not required by the subcontract. Due to this change from mitt application to spray painting, it took 2 days to locate and acquire acceptable local equipment not part |

| | of the contract requirements. See Exhibit 8, ¶ 6. |
|---|---|
| **2 delay days** | Global One lost two more days because SiteMaster insisted on changing the method and means of performance by changing the mitt painting requirement, which required 2 days to train Global One employees to use the new equipment. See Exhibit 8, ¶ 6. |
| **1 delay day** | Global One lost one more day because changes in the sequencing of how to paint the colorized bands on the Radio Tower, which required relocation of the shroud system. See Exhibit 8, ¶ 8. |

4.     The grand total of those delay days was 46 days. This constitutes approximately 46.5% of the total subcontract performance period days which were not available to Global One to complete its Work. In addition to the foregoing, there were an additional number of days (4-7) where weather conditions prevented work from being accomplished.

5.     Given this total number of delay days outside of Global One's control, Global One had only 53 days (or less) available in which to perform the Work that required 99 days to complete. Curiously, but nevertheless informative, is the fact that SiteMaster's own documents, including its critical path schedule (not disclosed to Global One until *after* Mr. Berryman's deposition), disclosed an overall percentage of the completion of the painting phase performed by Global One at a level of 59% completed − more than the percentage of the actual, non-delayed workdays available to Global One to perform its Work (i.e., 53.5%). See Deposition Exhibit 67, Critical Path Schedule as of 9/30/15 and 10/5/15, attached hereto as **Exhibit "9"**. In terms of the reliability of Mr. Berryman's methods employed in coming to his expert conclusions in the Berryman Report, the results of Mr. Berryman's expert analysis are nearly identical to SiteMaster's analysis of the percentage of the Work completed, even though Mr. Berryman did not have the benefit of the internal critical path information available to him in forming the Berryman Report. See Exhibit 3, pp. 2-3. This directly supports the reliability and credibility of Mr. Berryman's expert analysis in this case.

6.      Obviously, had Global One been able to work the additional 46 days provided for in the contractual documents (which it lost due to delays), there would have been sufficient time to complete the remaining 41% of the Work. Mr. Berryman's expert testimony will assist the jury in understanding how these delays affect the performance of Work in the construction context.

7.      Further, over thirty days prior to the scheduled completion date of the subcontract, SiteMaster and Global One both realized that complete performance of the agreement would be impossible but nevertheless agreed to have Global One continue its performance with the express agreement to pay for so much of the work as could be accomplished in the remaining period of contract performance. Based upon that understanding, Global One diligently worked and completed substantial work over that 30 day period, none of which work has been paid for by SiteMaster despite contractual provisions requiring prompt payment of amounts due for services rendered prior to the end of the work period. See Email of Terry Bigger (SiteMaster's Chief Financial Officer) dated August 13, 2015, Deposition Exhibit 17, attached hereto as **Exhibit "10"**.

### III.  ARGUMENTS AND AUTHORITIES

1.      **Rule 702 and the *Daubert* Standard**

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1992), the Supreme Court held that district courts must initially assess the admissibility of expert testimony under FED. R. EVID. 702. In Bitler v. A.O. Smith Corp., 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit discussed the role of district courts in considering a Daubert challenge. First, the Court should make a preliminary finding that the expert is qualified to testify. Next, the proponent of expert testimony must establish that the expert used reliable

methods to reach his conclusion and that the expert's opinion is based on a reliable factual basis. The Tenth Circuit cited four factors that district courts should apply to make a reliability determination:

> (1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has "general acceptance."

Id. at 1223 (citing Daubert, 509 U.S. at 593-94). The Tenth Circuit was clear that "a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." Id. In other cases, the Tenth Circuit has emphasized that any analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under Daubert.  Trucks Ins. Exchange v. MagneTek, Inc., 360 F.3d 1206, 1212-13 (10th Cir. 2004); Goebel v. Denver & Rio Grande Western R.R., 346 F.3d 987, 992 (10th Cir. 2003). Under Daubert, "'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'" Mitchell v. Gencorp Inc., 165 F.3d 778, 783 (10th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994)). The party offering the expert's testimony has the burden to prove that the expert is qualified and that his opinions are reliable. Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003); Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 (10th Cir. 2001); see also FED. R. EVID. Advisory Committee Note to 2000 Amendments ("the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence").

2.  **Mr. Berryman is qualified to testify as an expert in this case because he has over thirty-eight (38) years of experience in the construction industry working with subcontractors as well as licensed training and personal knowledge related to commercial construction billing practices.**

SiteMaster challenges Mr. Berryman's qualifications to testify as an expert to any matters in this case based on SiteMaster's self-serving views of the disputed matters to be tried in this case. Mr. Berryman's expert testimony will assist the fact finder in interpreting technical words and customary industry practices related to the construction subcontract at issue, including but not limited to commercial construction billing practices relevant to the case. The role of the court as a gatekeeper is determining the admissibility of expert testimony, not the weight of the evidence under Rule 702. See generally Daubert, 509 U.S. at 593-94. As a threshold matter, this means that the court will determine whether an expert witness is qualified to testify as an expert under Rule 702 to the subject matter of that expert witness's testimony. Here, Mr. Berryman will testify to the construction industry practices involving payment to subcontractors and commercial construction billing practices, as well as the effect delay days have upon required contract performance.[3] The criticisms raised by SiteMaster about the specific application of the procedure used by Mr. Berryman or questions about the accuracy of his results do not render a his methodology invalid or destroy its general acceptance. See One Beacon Ins. Co. v. Broad. Dev. Group, Inc., 147 Fed. Appx. 535 (6th Cir. 2005) (citing United States v. Bonds, 12 F.3d 540 (6th Cir. 1993)). These questions go to the weight of the evidence, not its admissibility. Id. at 545.

---

[3] Once again, contrary to SiteMaster's assertions in Defendant's Motion, Mr. Berryman is admittedly not an expert of the SSPC standards. His expert testimony goes to the more fundamental issues in this case of what happens in a construction subcontract when delays *not* the fault of the subcontractor (Global One here) prevented full performance of the subcontract and that payments made for delays based upon per diem rates for labor and other costs incurred during the delay do not excuse the need to ensure that additional time be given, commensurate with the total number of delay days, to complete the contract.

Despite SiteMaster's complaint that Mr. Berryman is not an expert in the SSPC, Mr. Berryman's qualifications and experience for the purpose of analyzing the subcontractor relationship at issue are undisputed. Mr. Berryman has over thirty-eight (38) years of experience in the construction industry working with subcontractors as well as licensed training and personal knowledge related to commercial construction billing practices. See Exhibit "4", p. 3. He has been a general contractor since 1978 and has constructed and/or renovated numerous structures while serving in the capacity of the prime contractor. Id. Mr. Berryman routinely enters into construction contracts and interprets, consistent with industry standards and customs, the contract documents and requirements in the performance of construction work. Id. He is knowledgeable of the means and methods used in construction projects as well the sequencing of construction activities required to perform construction projects. Id. All of these subject matters are relevant to the disputed issues regarding SiteMaster's non-payment of its obligations under the subcontract in this case.

As shown in the Berryman Report, the parties utilized an established schedule of values (SOV) billing method for administering payments over the course of the activities covered by the subcontract. Id. at p. 4. Mr. Berryman explained that the use of the SOV billing method to administer the appropriate partial payments as project activity progressed is consistent with industry practice. Id. This technical understanding of the payment provisions is material to the case and will be informative to the jury, consistent with Fed.R.Evid. 702.

The parties further dispute in this case the billing practices related to changes in the scope of work. More specifically, the parties dispute how to allocate time to perform work on changes and how to bill for changes to the scope of work (i.e., change orders). Mr. Berryman explained in the Berryman Report that:

> It is an industry standard that the additional costs incurred for changes to the contract scope of work over the course of a construction project are paid. Also, often paid are additional costs stemming from delays caused by incidents outside a contractor's control. Typically, contractors add a mark-up for overhead and profit to the increased costs.

Id. at p. 7. Upon reviewing the documents produced in discovery in this case, which Mr. Berryman listed on pages 2 and 3 of the Berryman Report, he calculated and concluded that under standard commercial construction billing practices, there remains $367,987.00 due and owing from SiteMaster to Global One for equipment delivered and services rendered. Id. As stated above, this is directly relevant to the termination clause in the subcontract which requires SiteMaster to make "prompt payment of the amounts due" or "pay [Global One] (without duplication) the actual costs incurred." See Exhibit 3, p. 5.

Mr. Berryman is sufficiently qualified to testify to these matters related to interpretations of the technical aspects of the construction subcontract at issue, and his testimony is admissible under Fed.R.Evid. 702. The questions raised by SiteMaster in its Motion goes to the weight of this evidence, not its admissibility.  This question of weight is for the jury to decide, not the Court, before trial, in exercising its threshold gatekeeping powers under *Daubert*.

Mr. Berryman is also qualified to testify to the matters regarding delays and interruptions outside the control of the subcontractor Global One, which SiteMaster uses as a fundamental part of its non-completion defense. Mr. Berryman explained in his report that:

> It is an industry standard that additional contract time is afforded to a contractor, or subcontractor, when its pursuit of the contract work is impeded by delays and interruptions that are clearly outside its control.

And further, he explained:

> It is [also] an industry standard that additional contract time is afforded to a contractor, or subcontractor, as necessary and reasonable when the scope of its contract work is changed and/or alternate means and methods of accomplishing the work are requested.

<u>Id.</u> at pp. 9 and 10.  The evidence will show that the subcontract established a project schedule of ninety-nine (99) calendar days for Global One to complete the Work on the Radio Tower Project; however, delays outside the control of Global One caused by SiteMaster and others prevented Global One from having the full ninety-nine (99) days it needed to complete its Work. <u>Id.</u> In the absence of a specific agreement of the parties related to delay days, SiteMaster had a duty pursuant to the industry standard to provide Global One with the entire ninety-nine (99) days to complete its Work by adding additional days to make up for the delay days. <u>Id.</u>[4] Mr. Berryman is qualified to testify to the customs and practices in the construction industry pertaining to delay days and changes in the scope of work, which are both relevant and material to the disputed issues in this case.

Defendant painstakingly takes this Court through the SSPC standards in Defendant's Motion in an attempt to distort the central issues in Plaintiff's case, and claim that the only disputed issue is whether Global One followed the SSPC standards in the performance of its Work. This case is about much more than the SSPC standards. Mr. Berryman's purpose as an expert witness in this case is *not* to testify regarding the SSPC standards. To the extent Defendant seeks to limit Mr. Berryman's testimony regarding the SSPC standards, this is a non-issue because Global One will stipulate that Mr. Berryman is not an expert in the SSPC. However, as shown herein, the purpose of Mr. Berryman's testimony is to testify regarding construction industry practices and commercial construction billing practices including

---

[4] Interestingly, Global One claims at least 46 days of delay caused by either Navy requirements and/or changes related to the means and methods of performance of the contract (without regard to some of the weather delays which would have added additional days of delay). These 46 days of delay equal 42.7% of the total contract performance days (i.e., 99 days). Internal documents of SiteMaster conclusively show the entire painting phase of the project to be anywhere from 55% to 59% completed, leaving between 41% to 45% of the work remaining to be performed, virtually the exact percentage of the delay days.

subcontractors, which are relevant subject matters that are central to Global One's claim that $367,987.00 remains unpaid by SiteMaster and that this sum is due Global One for equipment delivered and services rendered based on the SOV billing method selected by the parties in the contract documents. See Exhibits 3 and 4. Mr. Berryman's expertise is not simply general—it is specific to the commercial construction billing practices at issue in this case—and with his 38-plus years of experience in dealing with subcontractor relationships, he is qualified to testify in this case as he has in many other case. Id. The jury will be assisted by this technical expert testimony and it will serve to assist them in understanding the nature of the disputed questions of fact that the jury will be asked to resolve.

3.   **Mr. Berryman's expert testimony meets the *Daubert* fit test because the parties in this case dispute both the customs and practices for billing subcontractors in the construction industry and the industry standards for dealing with delays in work site availability, and Mr. Berryman's expert testimony will assist the fact finder in understanding the technical aspects of the evidence.**

SiteMaster relies heavily on its non-completion defense as its excuse for not making prompt payment of the amounts due, and further failing to pay Global One the actual costs incurred in performance of its Work. The problem with this theory is SiteMaster never provided Global One with the full ninety-nine (99) work days as provided by the same contract documents. Thus, a central question in this case is whether SiteMaster's delays in failing to timely make the site available to Plaintiff to commence and perform its Work and changes in the methods and means of performance ultimately created insurmountable difficulties in Plaintiff's ability to complete its Work. Mr. Berryman concluded that it did.  Specifically, in the absence of a specific agreement between the parties, the parties must apply the customs and practices observed with regularity in the construction industry regarding the modifications to the time of performance of the Work after delays. Mr. Berryman's expert testimony will serve the purpose

of providing expert testimony regarding the customs and practices in these situations, which will assist the jury in determining these disputed issues.

Evidence of the industry standards for delays and changes in the scope of work are relevant to the issues in this case. Mr. Berryman will assist the jury in answering these relevant questions. Under the federal rules of evidence, relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Bitler, 400 F.3d at 1234 (quoting FED. R. EVID. 401). The Supreme Court has described the consideration of relevant evidence in the context of expert testimony as one of "fit." Id. (citing Daubert, 509 U.S. at 591). Under controlling Oklahoma law, the technical words of a contract, such as interpretations of the meaning of "excusable delays" and "change orders" in the context of a construction subcontract, must be "interpreted as usually understood by persons in the profession or business to which they relate." See OKLA. STAT. TIT. 15, § 161 (2016). In this case, a principal purpose of Mr. Berryman's expert testimony will be to assist the jury in interpreting the technical words of the construction subcontract as usually understood by persons in the construction industry. Mr. Berryman's experience proves he is qualified to testify to this subject matter.

Generally speaking, the specification of a starting date in the construction industry constitutes an implied warranty that the project site will be prepared and available for performance of the subcontract work in accordance with the contract documents, and that the owner or contractor is liable to the contractor or subcontractor, respectively, for damages occasioned by a breach of this warranty. The Tenth Circuit has indeed held owners strictly liable for a breach of the implied warranty of site availability, without regard to the owner's control over causes of delay. See Steenberg Constr. Co. v. Prepakt Concrete Co., 381 F.2d 768, 774

(10th Cir. 1967) ("Steenberg"). In *Steenberg*, a drilling subcontractor on a dam project was held entitled to abandon its subcontract and recover the costs of subcontractor's attempted performance from the contractor and the surety when the site was not available for the subcontractor to commence work. Id. at 774. Specifically, the Tenth Circuit stated that:

> Having undertaken to perform strictly in accordance with the August work schedule, [subcontractor] is entitled to the benefit of its bargain. It was indisputably prevented from commencing operations until about the time they were scheduled to be completed. In situations like this performance by the contractor of his end of the bargain is a constructive condition precedent to the duty of the subcontractor to perform his part of the bargain ... and this is so we think even though performance of the condition precedent was frustrated through no fault of the contractor.

Id. Like SiteMaster argues in this case, the contractor in *Steenberg* argued that despite the material delay occasioned by parties other than subcontractor, the subcontractor was still obligated to do everything it could to complete the work at all costs. Id. The Tenth Circuit disagreed. Contrary to the contractor's argument that the subcontractor should bear the costs of the delays, the court declared instead "we think the obligation ran the other way" – the liability for the loss due to the delays was borne by the contractor, not the subcontractor. Id.[5]

Throughout discovery in this case, the parties in this case dispute both the customs and practices for billing subcontractors in the construction industry and the industry standards for

---

[5] As this Court previously observed in citing to *Steenberg*, the *Steenberg* rule does not permit a subcontractor to refuse to perform due to a contractor's delay when the written subcontract explicitly requires the subcontractor to cooperate and assist in establishing and *updating* a construction schedule, and further, the only reason for subcontractor refusing to perform were economic reasons despite the ability to continue and complete the work with additional time. See Ross Group Constr. Corp. v. Riggs Contr. Inc., 2012 U.S. Dist. LEXIS 162600, *20, 2012 WL 5511644 (N.D. Okla. Nov. 14, 2012) (citing Steenberg Constr. Co. v. Prepakt Concrete Co., 381 F.2d 768 (10th Cir. 1967)) (emphasis added). Rather, as this Court noted in *Ross Group*, the *Steenberg* rule provides that a subcontractor is excused from performance after insurmountable difficulties faced because of the contractor's delays. Id. Unlike the subcontractor in *Ross Group*, SiteMaster's and the Navy's delays and refusal to allow more time to complete the Work effectively prevented Global One from completing the Work (i.e., created insurmountable difficulties), which are detailed in the Berryman Report.

dealing with delays in work site availability. Mr. Berryman's expert testimony will assist the fact finder in understanding the technical aspects of the evidence related to this dispute. Specifically, Mr. Berryman will testify to relevant subject matters pertaining to the construction industry practice involving subcontractors including: (i) the industry meaning of technical terms used in the Radio Tower Project contract documents; (ii) the commercial construction billing practices related to work involving subcontractors (*e.g.*, invoicing, standard cost allocation, and change orders); (iii) the industry standard regarding obligations of the contractor to the subcontractor (and *vice versa*) in the event of delays and changes in the scope of work; and (iv) responding in rebuttal to Plaintiff's expert regarding topics within Mr. Berryman's expertise. See Exhibit 4. All of these subject matters are relevant to the case and the proper subject matter for expert testimony.

By statute, Oklahoma provides certain rules for the interpretation of contracts including construction subcontracts. OKLA. STAT. TIT. 15, § 151 *et seq.* (2016). In particular, "a contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties." Id. at § 159. Further, "technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense." Id. at § 161. This includes "[a]ll things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect...." Id. at 172; see also Samson Resources Co. v. Quarles Drilling Co., 1989 OK CIV APP 8, 783 P.2d 974, 1989 Okla. Civ. App. LEXIS 56 (Okla. Ct. App. 1989) (holding that, under the rules of interpretation of a contract provided for in OKLA. STAT. TIT. 15, §§ 157, 162, 171, and 172, it was error to exclude evidence of custom and usage regarding requirement of notice to operator of change in work that shifted liability for loss

to operator). Both explanations of the technical aspects of the contract documents and the customs and practices in the construction industry related to delays in the commencement and performance of the work and changes in the scope of work are relevant to the material disputed issues in this case, and Mr. Berryman will assist the trier of fact to determine these material fact issues, such as what is a schedule of values (SOV) billing method; what constitutes a compensable delay; how does the change order process operate; and the effect of delays upon the subcontract performance. A jury will be inevitably assisted by this technical expert testimony and it is admissible under Fed. R. Evid. 702.

## IV. CONCLUSION

Global One acknowledges that its expert, Mr. Berryman, is <u>not</u> an expert on SSPC standards, and does <u>not</u> intend to offer him as an expert in SSPC standards.  As this is the substantial focus of Defendant's Motion, the Motion is effectively moot.  What Mr. Berryman is qualified, and will, testify about are those areas reflected in his expert report (Ex. 4) concerning which he has unchallenged qualifications to so testify.   While much of the briefing in Defendant's Motion addresses matters about which Mr. Berryman will not testify, it must be remembered that the discovery deposition was taken by SiteMaster's counsel and they were the ones who chose to inquire about many issues not even addressed in Mr. Berryman's report, such as the SSPC standards.   SiteMaster cannot now claim that the only matters in dispute are standard of care questions under the SSPC standards when the pleadings and evidence in the case clearly suggest otherwise.

Since the filing of the Complaint in this case, this has always been a case where the issues of delays and changes and/or modifications to the subcontract methods and means of performance have been central to the dispute. <u>See</u> Complaint; Dkt. 2, paragraphs 10 and 11.  To

now suggest that Mr. Berryman's testimony be excluded because he is not an expert in painting techniques is simply untenable and cannot be grounds for distorting the issues and barring his otherwise admissible and relevant testimony.  His expert testimony about the effects of delays and changes in the methods and means of performance, when those matters affect the time needed for performance under the contract documents, are both relevant and will assist the trier of fact regarding the matters in dispute in this case.  Mr. Berryman's experience and understanding of construction industry customs, practices, and application of technical terms, are sufficient to meet Fed.R.Evid. 702 and the directives in Daubert.  The Court should deny the Motion in Limine and permit Mr. Berryman to testify about the matters for which he is absolutely qualified to render his expert opinion.

Respectfully submitted,

/s/ James P. McCann
James P. McCann, OBA No. 5865
Clayton J. Chamberlain, OBA No. 30520
MCDONALD, MCCANN, METCALF & CARWILE, LLP
15 East 5th Street, Suite 1400
Tulsa, OK  74103
918-430-3700
918-430-3770 – Facsimile
jmccann@mmmsk.com
cchamberlain@mmmsk.com

Attorneys for Plaintiff Global One Engineering, LLC

## CERTIFICATE OF SERVICE

I certify that on the 3rd day of October, 2016, I electronically transmitted the above and foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Andrew A. Shank
Heidi L. Shadid
Eller & Detrich, P.C.
2727 East 21st Street, Suite 200
Tulsa, OK 74114-3533
AShank@EllerDetrich.com
*Attorneys for Defendant*

/s/ *James P. McCann*