UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GLOBAL ONE ENGINEERING, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CV-583-CVE-FHM |
| ) | |
| SITEMASTER, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is Plaintiff's Motion to Strike the Second Expert Report of Defendant and Brief in Support (Dkt. # 45). Plaintiff Global One Engineering, LLC (Global One) asks the Court to strike the second expert report of defendant's expert witness, Mike O'Brien, that was disclosed to plaintiff approximately one month before the trial. Dkt. # 45. Defendant SiteMaster, Inc. (SiteMaster) responds that O'Brien's second report "merely aligns his previous opinions to the vast amount of evidence adduced after the deadline for [O'Brien] to submit his original report." Dkt. # 57, at 1-2.

**I**.

Global One alleges that it is "engaged in the business of maintenance, repair, and painting of telecommunication and radio towers," and it claims that SiteMaster hired it to paint an 827 foot tower located on a United States Navy facility on the island of Sicily, Italy. Dkt. # 2, at 2. Global One claims that weather conditions and modifications to the scope of work delayed its progress, and SiteMaster directed Global One to stop working in September 2015 even though the work was not completed. Id. at 3. Global One alleges that it was willing to complete the work but that SiteMaster claimed that it was required to retain a new subcontractor to finish painting the tower. Id. Global

One filed this case alleging that SiteMaster breached its contract with Global One by refusing to pay invoices submitted by Global One, and Global One seeks over $300,000 in damages and attorney fees. SiteMaster filed counterclaims against Global One for breach of contract and fraud, and SiteMaster seeks over $900,000 in damages and attorney fees. Dkt. # 16.

The Court entered a scheduling order setting a discovery cutoff of August 1, 2016 and the jury trial was set for November 21, 2016. Dkt. # 19. Global One was required to identify experts and produce any expert reports no later than June 20, 2016, and SiteMaster's expert disclosure deadline was July 5, 2016. The parties' requested an extension of their deadlines to identify experts and exchange expert reports. Global's One's expert deadline was extended to July 18, 2016 and SiteMaster's deadline was extended to August 1, 2016. Dkt. # 23. The parties also requested an extension of the discovery cutoff for the limited purpose of taking expert depositions, and the parties were given until August 26, 2016 to depose expert witnesses. On August 1, 2016, SiteMaster produced the expert report of O'Brien, who offered the following opinions:

> GLOBAL ONE's personnel were inexperienced and untrained in preparing surfaces to meet the requirements of SSPC SP2. This resulted in unnecessary rework to correct deficiencies and non-conformities.
>
> GLOBAL ONE'S personnel were untrained and unskilled in applying paint. This resulted in deficiencies, non-conformances and unnecessary work. The problems associated with coating application continued throughout the project and are an indication of the lack of skill and lack of experience with using airless spray equipment. However, even GLOBAL ONE'S application of the coating with mitts resulted in improper coating thickness, so it was not just the method that resulted in improper paint thickness and deficiencies it was the lack of skill of the applicators and their lack of attention to detail.
>
> GLOBAL ONE's decision to understaff this project in relationship to its proposal no doubt impacted the [sic] its poor and inadequate production rate. Its original plan for performing the work was flawed and its shroud was untested and unproven.

Dkt. # 27-6, at 63.

O'Brien was deposed on September 12, 2016. Counsel for Global One asked O'Brien if reviewing the opinions of Michael Berryman, plaintiff's expert on accounting matters, had caused O'Brien to reevaluate his own expert opinions. Berryman's expert report was available to O'Brien when he prepared his own expert report, and O'Brien's original report states that he reviewed Berryman's report. Dkt. # 27-6, at 5. O'Brien testified that Berryman improperly "ascrib[ed] the same production rate to portions of the tower that were at the top as portions of the tower that were at the bottom" and that Berryman failed to take climbing time into account. Dkt. # 57-6, at 4. O'Brien explained the basis for this disagreement with Berryman in response to questions posed by counsel for Global One. Id. at 4-12. O'Brien was also critical of the painting methods used by Global One. Id. at 14-23.

On October 17, 2016, O'Brien produced a second expert report, entitled "Supplemental Report." Dkt. # 45-1. Global One has filed a motion to strike the second expert report on the grounds that the report is untimely and that it is not a true supplemental expert report. In particular, Global One argues that the following opinions stated by O'Brien in his second report were not included in his original report:

> GLOBAL ONE completed the majority of its cleaning and painting on the lower sections of the tower. However, since the lower sections of the tower require the least amount of time climbing up and down the tower, the amount of time spent cleaning and painting on these sections is maximized in comparison to the upper sections, where the production time per day for cleaning and painting is reduced due to the additional climbing time. Therefore, although GLOBAL ONE completed cleaning and painting approximately one-third of the lineal feet on the tower, it is not true that it expended approximately one-third of its production time for the entire tower for cleaning and painting, nor is correct to extend the production rate GLOBAL ONE achieved on the lower sections of the tower to the upper sections.

. . .

3

> Based on the requirements of SSPC-PA1, GLOBAL ONE was required to remove all runs and sags that occurred as a result of its coating application process.

Dkt. # 45-1, at 3. O'Brien also withdrew certain paragraphs of his original report related to feathering because this issue was "irrelevant and immaterial." Id. at 6-7. At the pretrial conference on November 1, 2016, the Court discussed scheduling matters with the parties and, by agreement of the parties, the jury trial was continued to December 5, 2016. This is a special trial setting to allow the parties to schedule the appearance of out-of-state witnesses, and this is not the Court's trailing jury trial docket. The Court expedited the response and reply deadlines for Global One's motion to strike O'Brien's second report. The Court directed SiteMaster to focus on whether the second report was proper supplementation of an opinion that was stated in O'Brien's original report, because the Court advised Sitemaster that it had reviewed the original report and could find no opinion as to climbing time or "runs and sags."

**II.**

Global One asks the Court to strike O'Brien's second report because the second report is "neither timely nor a supplement," and the deadline for SiteMaster to provide any rebuttal expert evidence expired on August 17, 2016. Dkt. # 45, at 8. SiteMaster responds that the opinions contained in the second report supplement O'Brien's original report based on issues that arose in depositions subsequent to the issuance of his original report, and that Global One will not be prejudiced if O'Brien is permitted to testify as to the opinions stated in his second report.

The Federal Rules of Civil Procedure require an expert witness to prepare a report containing a "complete statement of all opinions to be expressed and the basis and reasons for them . . . ." Fed. R. Civ. P. 26(a)(2)(B). A party's failure to disclose the identity of an expert witness or provide a timely expert report requires the court to automatically exclude expert testimony unless the violation

of Rule 26(a)(2) was justified or was harmless under the circumstances. Fed. R. Civ. P. 37(c)(1); Jacobsen v. Deseret Book Co., 287 F.3d 936, 951-52 (10th Cir. 2002). A court may exclude specific opinions or bases for the expert's opinions that were not fairly disclosed in the expert's report. Keach v. United States Trust Co., 419 F.3d 626, 641 (7th Cir. 2005). The Tenth Circuit has identified four factors to determine whether a violation of Rule 26(a)(2) was harmless or justified: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. Woodworker's Supply, Inc., v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999).

**A.**

The first issue the Court must decide is whether the "supplemental" report was timely provided to plaintiff. There is no dispute that O'Brien's original report was timely produced on August 1, 2016. Under Rule 26 (a)(2)(D)(ii), any expert evidence that "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)" must be exchanged within 30 days after the opposing party's disclosure. In contrast to rebuttal expert evidence, a party is required to supplement expert disclosures under Rule 26(e) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e)(1)(A). A party must supplement its expert disclosures "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." SiteMaster does not argue that O'Brien's second report was a rebuttal report and it argues that the second report was a timely supplemental disclosure under Rule 26(e). The scheduling order set a deadline of October 17, 2016 for the parties to make pretrial disclosures and the second report was produced to

5

Global One on October 17, 2016. O'Brien's second report is timely if the Court finds that the report is a true supplemental report.

Under Rule 26(e), a party is under a duty to supplement "in a timely manner if the party learns that in some material respect the disclosure is incomplete or incorrect and if the additional and corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Rule 26(e)(1) does not permit parties to produce "supplemental reports whenever they believe such reports would be 'desirable' or 'necessary' to their case," and supplemental reports are permitted "(1) upon court order; (2) when the party learns that the earlier information is inaccurate or incomplete; or (3) when answers to discovery requests are inaccurate or incomplete." Minebea Co., Ltd. v. Papst, 231 F.R.D. 3, 6 (D.D.C. 2005). Although parties are permitted to supplement expert disclosures, Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report." Leviton Mfg. Co., Inc. v. Nicor, Inc., 2007 WL 1306759 *4 (D.N.M. April 20, 2007) (quoting Beller v. United States, 221 F.R.D. 696, 701 (D.N.M. 2003)). As one court has noted:

> A supplemental expert report that states additional opinions or rationales or seeks to "strengthen" or "deepen" opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given. This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a).

Cook v. Rockwell Int'l Corp., 2006 WL 3533049 *87 (D. Colo. Dec. 7, 2006) (citations omitted). Permitting late supplementation of expert reports also has the effect of denying the opposing party the opportunity to file a meaningful Daubert motion as to questionable expert testimony. See Miller

6

ex rel. S.M. v. Bd. of Educ. of Albuquerque Public Schools, 455 F. Supp. 2d 1286, 1299 (D.N.M. 2006).

SiteMaster argues that O'Brien's second report is a supplemental report, because O'Brien was attempting to provide "complete" opinions in light of his deposition testimony and review of the deposition testimony of other witnesses. Dkt. # 57, at 6. According to SiteMaster, O'Brien's supplemental report "did not change his ultimate opinions, but merely sought to align the after-acquired evidence to this previous report." Id. at 6-7. Sitemaster cites to pages 18, 21-33, and 35 -36 of O'Brien's original report to support its argument that O'Brien's ultimate opinion was that "SSPC PA-1 applied to the Project, Global One failed to understand the SSPC standards and failed to complete the work according to the requirements of SSPC PA-1 and SP-2." Dkt. # 57, at 2. The Court has reviewed O'Brien's original report, and the cited pages of O'Brien's original report do not give Global One notice that he intended to offer any opinion on climbing time or "runs and sags." O'Brien does discuss the number of climbers that Global One claimed that it would utilize and the level of the climbers' experience, but he does not offer any opinion concerning the effect of climbing time on completing the painting of the top of the tower.[1] Dkt. # 27-6, at 7. The original report discusses techniques required to complete the work and applicable industry standards, and O'Brien mentions that excessive paint thickness can cause runs and sags. Id. at 35. However, this was part of a general discussion of proper scraping and painting techniques, and he stated that he did "not see any reports of overspray problems" associated with the use of an airless paint sprayer.

---

[1] The Court questions whether expert testimony is actually necessary on the issue of climbing time. It does not require expertise in industry practices to know that it will take longer to reach the work area when painting the top of the tower as compared to the bottom, and a fact witness could testify that it actually took longer to paint the top of the tower.

Id. at 36. O'Brien did opine that Global One's personnel "were untrained and unskilled in applying paint" and that Global One's employees lacked experience using airless sprayers, but it is not reasonable to read the original report to contain an opinion that "GLOBAL ONE was required to remove all runs and sags that occurred as a result of its coating application process." Id. at 63; Dkt. # 45-1, at 3.

The Court finds that O'Brien's second report cannot be treated as a supplemental report under Rule 26, because the opinions contained in the second report are new opinions and O'Brien is not attempting to supplement an incomplete opinion in his original report. Instead, it is clear from SiteMaster's response that it intends to use the second report as a rebuttal report that states new opinions in response to "after-acquired [evidence] through depositions that [O'Brien] could not have relied upon for his original report." Dkt. # 57, at 6. O'Brien was not prohibited from supplementing the opinions contained in his original report based on subsequent deposition testimony, but he cannot use a second report to offer wholly new opinions that were not contained in his original report. At the pretrial conference, the Court directed SiteMaster to respond to the motion to strike by identifying where in O'Brien's original report Global One was given notice that O'Brien intended to offer opinions on climbing time and "runs and sags." SiteMaster's response fails to make such a showing and the Court finds that O'Brien's second report is not a supplemental expert disclosure. Based on this finding, the Court finds that the second report was not timely disclosed to Global One.

**B.**

The Court must now consider the Woodworker's Supply factors to determine if SiteMaster has met its burden to show that its untimely disclosure of O'Brien's second factor was harmless or justified. As to the first Woodworker's Supply factor (prejudice), SiteMaster argues that Global One

will have sufficient time to prepare to cross-examine O'Brien about the opinions in his second report and Global One will not suffer any prejudice. The Court finds that Global One will be prejudiced if O'Brien is permitted to testify as to the opinions contained in his second report. Trial is weeks away and the discovery cutoff has expired, and Global One will be unable to depose O'Brien about his new opinions. As to the second and third Woodworker's Supply factors (ability to cure and disruption of the trial), SiteMaster argues that O'Brien could be made available for a limited deposition but acknowledges that this might delay the trial set for December 5, 2016. The point of specially setting this case for trial on December 5, 2016 was to provide the parties certainty of the trial date to allow them to coordinate with out-of-state witnesses, and resetting the trial date would disrupt both parties' trial preparations. As to SiteMaster's suggestion that O'Brien appear for a limited deposition, the discovery cutoff expired in August 2016 and the parties have not requested leave to take an out-of-time deposition and, even if they had, Global One should not have to spend its limited time before trial taking another deposition. Finally, SiteMaster argues that there is no evidence of bad faith or willfulness in the timing of its disclosure of O'Brien's second report. Dkt. # 57, at 9-10. The Court agrees that there is no evidence that SiteMaster is purposefully seeking to disadvantage Global One, but the Court must take the timing of Global One's disclosure into account. Based on SiteMaster's response (Dkt. # 57), the parties completed depositions in the first half of September 2016, but SiteMaster did not produce O'Brien's second report until October 17, 2016. Even though there is no evidence of bad faith, SiteMaster has failed to explain its delay in producing O'Brien's second report. The Court has considered all of the Woodworker's Supply factors and finds that SiteMaster's untimely disclosure of O'Brien's second report was not harmless or justified, and O'Brien may not testify about the opinions contained in his second report.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Strike the Second Expert Report of Defendant and Brief in Support (Dkt. # 45) is **granted**.

**DATED** this 15th day of November, 2016.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE